# KAZAKSTAN

**Resolution No. 655 Dated 18 May 2001 On An Agreement On Fiduciary Management Of The National Fund Of Kazakstan**

Copyright © 2002 BARROWS COMPANY INC.
116 East 66th Street – New York, NY 10021

Resolution of the Government of the Republic of Kazakhstan
No. 655 dated May 18, 2001

On an Agreement on Fiduciary Management of
the National Fund of the Republic of Kazakhstan

The government of the Republic of Kazakhstan resolves:

1. That the attached draft Agreement on Fiduciary Management of the National Fund of the Republic of Kazakhstan (hereinafter referred to as the Agreement) shall be approved.

2. Minister of Finance of the Republic of Kazakhstan Mazhit Tuleubekovich Yesenbayev shall be instructed to sign the agreement on behalf of the government of the Republic of Kazakhstan.

3. This Resolution shall enter into force as of the date of its signing.

K. Tokayev
Prime Minister of the Republic of Kazakhstan

BARROWS CONFIDENTIAL

Approved by Resolution
No. 655, May 18, 2001
of the Government of the Republic of Kazakhstan

**Draft**

AGREEMENT No. \_\_\_\_\_
**On Fiduciary Management of the National Fund of the Republic of Kazakhstan**

Astana                                             "\_\_" _____ 2001

The National Bank of the Republic of Kazakhstan, henceforth the Bank, as one party and the Government of the Republic of Kazakhstan, henceforth the Government, as the other party, henceforth the Parties, acting in accordance with Decree No. 543 dated January 29, 2001 of the President of the Republic of Kazakhstan "On Some Issues Concerned With the National Fund of the Republic of Kazakhstan" and other regulatory legal acts regulating activities of the National Fund of the Republic of Kazakhstan (henceforth the Fund), have agreed as follows.

## 1. OBJECT OF THE AGREEMENT

1.1. The Government hereby transfers the Fund to the Bank's fiduciary management and the Bank is obliged to perform fiduciary management of the Fund in the interests of the Government through investment of the Fund's financial assets.

## 2. RIGHTS AND OBLIGATIONS OF THE BANK

2.1. The Bank shall have the right:

2.1.1. to possess, use, and dispose of the Fund under conditions specified herein;

2.1.2. to independently invest the Fund within the framework of the rules of investment operations, to include transfer of part of the Fund to the management of an outside manager. Control over activities of outside managers shall be the responsibility of the Bank;

2.1.3. to receive a commission quarterly for the Fund's fiduciary management amounting to 0.075 percent per annum of the Fund's average monthly market value in the reporting quarter, with the exception of the Fund's assets under outside management, and compensation for expenses borne thereby pursuant to conditions herein in the course of performance of its obligations under this Agreement.

2.2. The Bank is obliged:

2.2.1. to perform fiduciary management of the Fund within the framework of the rules of investment operations in accordance with currently effective regulatory legal acts of the Republic of Kazakhstan and the conditions of this Agreement;

2.2.2. to inform the Government regarding selection of each outside manager of the Fund and each Fund custodian;

2.2.3. to develop and approve, in coordination with the Government, the rules of investment operations concerned with the Fund's management, to include the basic conditions hereunder:

- the goal of investment, which shall be defined as safeguarding primary investment capital, maintaining asset liquidity, and achieving a high yield from management of the Fund at acceptable market risk;

- the kinds of currencies and their permissible proportion within the structure of the Fund's assets;

- the list of permissible investment instruments and the maximum share of the Fund's assets that may be invested in each kind of instrument;

- management of the risk of change in market value of the Fund's assets owing to change in conditions on the financial market;

- the maximum allowable volume of investment and transfer of the Fund's assets per 1 (one) outside manager;

- the ratio of the volumes of the Fund's assets managed independently by the Bank and by outside managers;

- regular evaluation of the effectiveness of management of the Fund's assets based on a standard collection of financial instruments;

-specification of constraints on credit ratings of contracting partners and of investment instruments;

- the planned yield on which investment of the Fund's assets and their transfer to the operational management of outside managers shall be oriented;

- presence of highly liquid assets (financial market assets of countries with an AAA/Aaa credit rating) permitting fulfillment of the Fund's stabilization function.

2.2.4. to submit to the Government, within 30 (thirty) calendar days following the reporting period, quarterly and annual reports on the results of the Fund's fiduciary management approved by the Bank's Board of Directors and containing information on the

Fund's market value on the last day of the reporting period, the return from operations carried out with the Fund, the amount of income received for the reporting period, the composition of the Fund's portfolio at the end of the reporting period, and the current risk from changes in interest rates;

2.2.5. to make transfers of money (as compensation for losses defined as the difference between the approved and actual receipts of the Republican and local budgets from organizations in the raw material sector) and earmarked transfers from the Fund within 10 (ten) business days from the moment of receipt of instructions from the Government to make transfers to the Republican and local budgets according to procedure and in cases specified by regulatory legal acts regulating the Fund's activities;

2.2.6. to credit the Fund with investment income from its management;

2.2.7. to respond to queries from the Government on activities associated with the Fund's fiduciary management;

2.2.8. to designate jointly with the Government a legal advisor, who shall represent the Fund's interests whenever necessary in foreign states and in resolution of legal disputes arising in the course of the Fund's fiduciary management;

2.2.9. to designate a special officer (of rank not below Deputy Chairman of the Bank), whose powers shall include making day-to-day decisions concerned with fiduciary management of the Fund on the Bank's behalf (an authorized representative).

2.3. the Bank shall be liable for the Fund's losses resulting from improper performance of its obligations under this Agreement. The Bank shall bear property liability for obligations from transactions executed beyond its authority or in violation of constraints established thereon.

## 3. RIGHTS AND OBLIGATIONS OF THE GOVERNMENT

3.1. The Government shall have the right:

3.1.1. to query the Bank concerning its activities associated with performance of its obligations set forth herein;

3.1.2. to make decisions regulating the Fund's activities jointly with the Bank in compliance with current regulatory legal acts of the Republic of Kazakhstan.

3.2. The Government is obliged:

3.2.1. to designate, on a competitive basis jointly with the Bank, a legal advisor who shall represent the Fund's interests whenever necessary in foreign states and in resolution of legal disputes arising in the course of the Fund's fiduciary management by the Bank;

3.2.2. to submit to the Bank projections of the Fund's quarterly receipts and calculations for anticipated amounts of compensation for losses of Republican and local budgets 1 (one) month prior to the date of proposed withdrawal of money (assets), [and to] notify the Bank in order to allow it to make the necessary changes in the portfolio of the Fund's assets;

3.2.3. to facilitate submission of documents explaining the status of the Fund and any other documentation pertaining to the Fund's activities which tax and other appropriate authorities of foreign states may request;

3.2.4. to reimburse expenses for the Fund's fiduciary management (item 4.1 herein), with the exception of the Bank's commissions, within 3 (three) business days from the moment of receipt of notice from the Bank;

3.2.5. to pay a quarterly commission to the Bank pursuant to item 2.1.3 herein within 30 (thirty) days from the moment of receipt of notice from the Bank;

3.2.6. to prepare jointly with the Bank and approve the schedule for submission of information and financial reports on activities connected with the Fund's management;

3.2.7. to provide for an annual external audit of the Fund at the Fund's expense.

## 4. EXPENSE OF THE FUND CONNECTED WITH FIDUCIARY MANAGEMENT AND WITH PAYMENT OF COMMISSIONS

4.1. Expenses of the Fund connected with fiduciary management and with payment of commissions shall include:

- the Bank's commissions;

- the commissions of outside managers;

- payment for services of custodians;

- other expenses that may arise in fiduciary management of the Fund, including payment for services of a legal advisor whenever necessary;

- losses that may arise from early cancellation of management agreements with outside managers.

## 5. FORCE MAJEURE

5.1. The Parties shall be released from liability and from performance of their obligations under this Agreement if it is shown that nonperformance of obligations was the

consequence of onset of circumstances of insurmountable force--that is, extraordinary and unpreventable circumstances (natural phenomena, acts of war, etc.) that the Parties could not foresee.

5.2. Upon conclusion of forces majeure, the Parties shall return to performance of their obligations under this Agreement.

## 6. DISPUTE RESOLUTION PROCEDURE

6.1. In the event that differences arise in the course of performance of obligations under this Agreement, the Parties shall be required to undertake all necessary measures to settle them in accordance with current legislation of the Republic of Kazakhstan.

## 7. MISCELLANEOUS CONDITIONS

7.1. The Government shall be the beneficiary under this Agreement.

7.2. Under fiduciary management the Fund shall be immune from the claims of third persons.

7.3. This Agreement shall come into force on the date it is signed by both Parties, and it shall be entered into by the Parties for 20 years. In the event that one month before the expiration of this Agreement neither of the Parties informs the other Party in writing of its desire to cancel this Agreement, it shall be deemed extended for a subsequent term.

7.4. This Agreement may be dissolved only on the basis of a corresponding decision of the President of the Republic of Kazakhstan.

7.5. All changes and additions to this Agreement shall be legalized by a supplemental arrangement signed by both Parties.

7.6. This Agreement shall be prepared in four copies: two copies in the state language and two copies in Russian, each of which shall have identical legal force.

7.7. In the event of reorganization of one of the Parties the rights and obligations under this Agreement shall not terminate, and shall pass to the successor of the Parties.

7.8. Any instructions and messages (information) transmitted within the framework of this Agreement shall be transmitted by the Parties to one another only in writing (by messenger, by mail, by fax).

**On behalf of the Bank:**
**Chairman of the National Bank**
**of the Republic of Kazakhstan**

_____ G. A. Marchenko

**On behalf of the Government of**
**the Republic of Kazakhstan:**
**Minister of Finance**
**of the Republic of Kazakhstan**

_____ M. T. Yesenbayev

BARROWS CONFIDENTIAL