Specialized monthly magazine "Lawyer"



The authors of the magazine "Lawyer" - experts in various areas of law, heads of departments, academics and practitioners. There are articles of domestic and foreign experts; consultations and interviews; historical records and more. Publications thematically and substantively reflect the complexity and inconsistency of domestic law. On matters that may be of interest to a wide range of legal community, on the pages of "lawyer" and you can speak. Among our readers - lawyers, law enforcement officials, financiers and economists, MPs, industrialists and entrepreneurs of the Republic of Kazakhstan.

RIGHTS NEWS

December 15th

**17:51** - Kazakhstan grew rice and flour

**17:33** - A new economic union open to other camp - Nazarbayev

**17:21** - Dmitry Mezentsev thanked Kazakhstan for the excellent organization of the Council of Heads of Government of the SCO

**17:11** - Evening session KASE: USDKZT_TOM = 182,92, USDKZT_SPT = 182,42

**17:04** - Kazakhstan and OECD strengthen cooperation

**16:54** - Kazakh President gave details of the anti-crisis measures for the country in the near future

**16:49** - K. Massimov summed up the next 13th session of the Council of Heads of Government of the SCO Member States

**16:45** - Nursultan Nazarbayev: Reducing the budget will not affect social spending

**16:40** - Afternoon session KASE: USDKZT_TOD - 181,72 / 181,81, USDKZT_0_001 = +0,86, USDKZT_0_002 = +1,42, RUBKZT_TOD = 3,1092

**16:37** - In the SCO will create a single university

**16:23** - Medvedev believes it is important to discuss the SCO reduction of tariffs for roaming

**16:22** - The SCO countries should actively inform about infectious diseases - Medvedev

**16:18** - The "Nurly Jol" supported by the international community - Nazarbayev

**16:13** - In June 2015 Russia will hold a business summit of the SCO

**16:02** - National Bank has a five-year record of annual growth of gross

Поиск по статьям    Find

**July, № 7, 2006**

{category}

The authors of this article - Doctor of Law, Professor, Head of Civil Law and Civil Procedure **A. DIDENKO** and PhD, managing partner of the Almaty office of the law firm "Salans" **A. Kenjebayeva** analyze the legal side of the legal regime of the National Fund (or rather the National Fund) and not its legal status or the legal status, since due to the adoption in Kazakhstan National Fund model of its formation does not have legal status, although in some countries such a fund is a legal entity. It is not subject to the provisions of the Civil Code (CC), and other laws relating to such organizational form of non-profit entities, as public funds.

Legal definition of the National Fund is contained in the Budget Code of the Republic of Kazakhstan "National Fund of the Republic of Kazakhstan is a state assets in the form of financial assets accumulated in the account of the Government of the Republic of Kazakhstan in the National Bank of the Republic of Kazakhstan, as well as other property, except for intangible assets" ( n . 1, Art. 11 ).

National Fund of the Republic of Kazakhstan (hereinafter - the National Fund) was established in 2000 in accordance with the Decree of the President of the Republic of Kazakhstan dated August 23, 2000 "On the National Fund of the Republic of Kazakhstan." Goals and objectives of the National Fund have been identified in the Decree of the President of the Republic of Kazakhstan dated January 29, 2001 "On some issues of the National Fund of the Republic of Kazakhstan." The conceptual solution of the main issues of the National Fund of the Republic of Kazakhstan was completed by the Budget Code of RK. Finally, the Presidential Decree of September 1, 2005 was approved by the concept of formation and use of the National Fund of the Republic of Kazakhstan in the medium term.

In the Address of the President of the Republic of Kazakhstan Nursultan Nazarbayev to the people of Kazakhstan from March 1, 2006 specially emphasized the role of the National Fund, which aims to ensure financial market stability, maintaining the necessary flexibility in the real exchange rate in order to reduce the negative effects of inflation and, simultaneously, to stimulate economic growth. The government is obliged at the same time to ensure transparent and efficient generation and use of the Fund.

Politicians, journalists, economists have devoted a lot of speeches about the meanings of the National Endowment for the country's economy. The legal thought has not yet paid enough attention to the peculiarities of the legal regime of a particular kind of state property. In the normative legal acts are sometimes used imprecise wording which can give rise to a misconception about the National fund as a legal entity and not as an estate. For example, in the aforementioned concept of formation and use of the National Fund refers to the normative legal acts regulating activities (emphasis added. - AD, AK) National Fund.

National Fund - part of the state treasury

The objects of state property law are divided into objects of republican and communal property. The National Fund is, of course, the category of national importance. Property related to the republican property, intended to ensure the needs of the state as a whole. In accordance with paragraph. 2 tbsp. 192 of the Civil Code Republican property consists of the state treasury and property assigned to the State Republican legal entities in accordance with the legislation. Since the National Fund are not fixed nor for what state legal entities, the process of elimination, we can conclude that this kind of state-owned property constitutes "the state treasury." This finding was also confirmed by the notion of the public treasury. Thus, the second part of para. 2, Art. 192 of the Civil Code with reference to Article 193 of the Civil Code provides that the state treasury RK constitute republican budget funds, gold and currency reserves and the diamond fund land, its minerals and water, flora and fauna, and other natural resources and other state property, not assigned to the state legal persons.

If private property can not be certain types of property which, in accordance with the legislative acts can not belong to individuals or legal entities ( Art. 191 CC), then the state ownership of such restrictions is not set, that is owned by the state can be any property. This category is state property and the National Fund.

The legal regime of the majority of objects of Republican property devoted to special laws: budget, land, minerals, currency. In a separate legislative regulation also need the relations connected with the National Fund. One only its volume reflects the potential of the National Fund for the economy of the country. The approved by the Presidential Decree of September 1, 2005 Report on the formation and use of the National Fund of Kazakhstan in 2004 the total volume of the National Fund amounted to 528,233,521 thousand. tenge. In 2005, the National Fund received 2.9 billion US dollars, or about 385.4 billion tenge, ie in fact, 18.4% of total revenues. In 2005, the fund has grown from 5.1 to 8 billion US dollars, ie to 1.71 trillion tenge, or 156.9%. For comparison, we can call these numbers: spending on education amounted to 66,384,355 thousand. Tenge; the costs of the judicial system - 9,775,553 thousand. tenge.

The basis of the classification of varieties of objects owned by the Republic, reflecting the most significant features of each of them, may be, in our opinion, the sources of their formation, subjects and methods of disposal. Consider these characteristics in relation to the National Fund.

Sources of formation of the National Fund are determined by the Budget Code of the Republic of Kazakhstan, in Art. 23 which contains a list of them. The largest sources are the official transfers from the republican budget, defined as the excess of actual income to the republican budget from organizations of the raw materials sector of their annual volumes approved the law on the national budget for the relevant financial year. Commodity sector organizations are legal entities whose main activity is the extraction and processing of natural resources. List of Organizations commodity sector is set by the Government.

Proceeds from the commodity sector organizations represent the totality of revenues on those types of taxes as corporate income (this tax is transferred at the moment JSC "CNPC-Aktobe", JSC "Exploration Production" KazMunaiGas "," Tengizchevroil "," Karachaganak Petroleum Operating B .V. ", JSC" Mangistaumunaigas ", JSC" Karazhanbasmunay "); value added tax; excess profits; power ups; royalties; share of the Republic of Kazakhstan on production sharing under concluded contracts.

Other sources of replenishment of the National Fund are:

official transfers from the republican budget, determined by the proceeds from the privatization of state property being in the republican ownership and belonging to mining and processing industry;

official transfers from the republican budget calculated at the rate of ten per cent of the national budget planned income to the republican budget from organizations of the raw materials sector;

official transfers from the local budget, determined by the proceeds from the sale of agricultural land;

investment income from the management of the National Fund, which are formed by placing funds of the National Fund in financial assets and other property, except for intangible assets;

international reserves

All rights news

LEGAL FORUM

AUTHORIZATION

логин
••••••
Login
Register
Forgot your password?

other receipts and income.

The concept of formation and use of the National Fund from September 1, 2005 provides for the expansion of the sources of the National Fund. Thus, the direct taxes levied on oil sector now pay no separate entities, according to the list of the Government of the Republic of Kazakhstan, and all legal persons engaged in the production and (or) sale of crude oil and gas condensate, the National Fund receives all the proceeds from the sale of plots of agricultural purpose.

Concepts, control and use in relation to the funds are of the same order as the use of money is nothing else than the disposal, so, speaking of the National Fund available, we will also keep in mind how to use it.

Order of the National Fund in strict civil law sense of the power to exercise only the President of Kazakhstan. In accordance with paragraph 3 para. 2 of the Decree of the President of the Republic of Kazakhstan "On the National Fund of the Republic of Kazakhstan", "volume and allocation of the Fund is determined by the President of the Republic of Kazakhstan, on the proposal of the Government of the Republic of Kazakhstan". At the time, heard unfounded accusations of lack of transparency in the use of the Fund, as there were no rules on the admissibility of certain disbursement of funds, reporting procedures for the expenses incurred. The current legal framework has reduced opportunities for such accusations. Legal mechanism prior to the adoption of a presidential act on the disposition of the National Fund, including other bodies with real legal value of their decisions. This - the Government of Kazakhstan, the National Bank of Kazakhstan, the National Fund Management Council. The scope of the order by the President of the National Fund of Kazakhstan, in turn, outlined the law that does not allow arbitrary costs of the Fund.

The competence of the Board of Management National Foundation boils down to the fact that he, as an advisory body to the President of Kazakhstan, develops proposals for the effective use of the National Fund and its placement in financial assets and other property, except for intangible assets.

The functions of the Board of Management National Fund are:
1) development of proposals to improve the efficiency of formation and use of the National Fund;
2) To consider and develop proposals for the volume and direction of use of the National Fund;
3) development of proposals on the list of allowed financial assets and other assets, except for intangible assets to accommodate the National Fund.

The decision to create the Council for the management of the National Fund, its composition and the position shall be approved by the President of the Republic of Kazakhstan.

The Government of the Republic of Kazakhstan and the National Bank of Kazakhstan also implement authority orders the National Fund in cases where the contract entered into between the fiduciary and the National Bank when implementing powers to manage the Fund's assets. However, this order is derived in nature, as is done in the limits defined by the state on behalf of the President of the Republic of Kazakhstan.

Regulatory acts of the President of the Republic of Kazakhstan National Fund in respect of limited legislative framework, which use predefined objectives of the National Fund.

Budget Code of RK comprehensively regulates this question.

National Fund expenses:
to compensate losses of the republican budget, defined as the difference between the approved and actual amounts of revenue to the national budget from organizations of the commodity sector as a whole for the current fiscal year. The amount of compensation can not exceed the total amount nedoispolneniya republican budget revenues. In case of exceeding the total actual amount of income over their approved amount of the payment is not made;
in the form of targeted transfers from the National Fund to the republican budget for purposes defined by the President of the Republic of Kazakhstan;
to cover the costs associated with the management of the National Fund and the annual audit.

National Fund located in eligible financial assets and other assets, excluding intangible assets, in order to ensure:
preservation of the National Fund of the Republic of Kazakhstan;
maintain an adequate level of liquidity of the National Fund of the Republic of Kazakhstan;
high level of profitability of the National Fund of the Republic of Kazakhstan in the long run at a moderate level of risk;
earn investment income.

Concept formation and use of the National Fund provides that the National Fund assets are invested exclusively in foreign financial instruments denominated in foreign currencies and are the benchmark portfolio, consisting of securities denominated in foreign currency. The main part of the assets of the National Fund currently manage «ABN AMRO Bank», «State Street Bank», «Deutche Bank», «BNP Paribas», «Citybank» and HSBC.

List of allowed financial assets and other assets, except intangible assets is determined by the Government of the Republic of Kazakhstan together with the National Bank of Kazakhstan on the proposal of the Board of Management National Fund.

National Fund can not be used for lending to individuals and legal entities and as collateral.

Compensation for losses due to the republican budget of the National Fund is carried out in the course of its execution without specifying the national budget in Parliament for the fiscal year, with the consent of the Board of Management National Fund.

Volumes of targeted transfers from the National Fund to the republican budget, approved by the law on the national budget for the relevant financial year. The concept of formation and use of the National Fund in order to prevent "exhaustion" of the National Fund can not exceed the law on state budget for the corresponding fiscal year the amount of the transfer from the National Fund to the state budget by more than one third of the assets of the National Fund.

Order of transfer of assets in the National Fund and the National Fund of use is determined by the Government.

The Trust Deed National Foundation - a civil contract

One of the few cases of state participation in civil matters is the National Fund Trust Deed.

Paragraph 6 of Article. 11 of the Budget Code provides that the National Bank assumes responsibility for managing the National Fund on the basis of the Trust Deed entered into between the National Bank and the Government. This particular contract, because is between the higher public authorities, but as any civil contract has at the same time in private content.

May 18, 2001 the Government of Kazakhstan adopted a resolution "On the Trust Deed by the National Fund of the Republic of Kazakhstan", which was further complemented by Decree of the Government of the Republic of Kazakhstan dated July 26, 2004 "On some issues of trust management of the National Fund of the Republic of Kazakhstan."

Signing the contract of trust management, the state acts in public circulation while in the public interest (stabilization of the socio-economic development, the accumulation of savings for future generations, reducing the country's vulnerability to external factors), but realizes this interest is purely civil and legal instruments.

On this contract subject to the provisions of the Civil Code as a Trust Deed (Articles 883-895), and the general rules of contract law. This fact is sometimes overlooked in the legislation. Thus, in the decision of the Government of the Republic of Kazakhstan dated May 18, 2001 "On the Trust Deed by the National Fund of the Republic of Kazakhstan" provides that the contract may be terminated only on the basis of a decision of the

President of the Republic of Kazakhstan ( para. 7.4 ). But the President of the Republic of Kazakhstan is not a party to this contract and, therefore, can not have the legal powers to its dissolution. This agreement may be terminated on general grounds stipulated by the Civil Code, the parties who have concluded it.

Parties to the contract of trust management are the National Bank and the Government. Art. 24 of the Law "On the National Bank of Kazakhstan" regulates the activities of the National Bank, where he serves as the usual role of a central bank - the holder of national reserves. Functions of the National Bank's asset management are not regulated by this article of the law. The National Bank performs its function as a trustee by the National Foundation on the basis of a civil contract (ie, the Trust Deed).

The subject of the contract are the National Fund. Term of the contract of 20 years with automatic extension of its validity for another term if neither party one month before its expiry notifies the other side of the reluctance to extend the contract.

The peculiarity of the contents of this agreement is that all its main conditions are predetermined by statute and, therefore, act as so-called regulatory and contractual conditions, the well-known socialist law and to minimize the market in legal mechanisms. Such conditions are peculiar only to public contracts and contracts of adhesion, some of which are based on standard contracts approved by statute. This agreement is neither a public nor a contract of adhesion. The legal nature of these contracts is inherent in such indication exists, the uncertainty of a future parties to the contract (the joining entity), whereas in the present contract both counterparties are defined in advance.

The main duty of the Trustee - National Bank is to ensure the safety of the primary investment capital, to obtain high yields from fund management.

In carrying out its functions under the Trust Deed, the National Bank makes a profit for itself in the form of income from the management of the National Fund. Subparagraph 4 of paragraph 1 of Article 2 of the Treaty of the Trust Deed also provides that the National Bank has the right "... to receive commission for the year, depending on the results of self-management of the Fund equal to 10% positive windfall, but not more than 0.02% of the the average market value of funds under independent management of the Bank. Additional income is defined as the difference between the actual yield and the yield of the benchmark portfolio of the Fund, multiplied by the arithmetic mean of the market value of the portfolio in the independent management of the Bank at the end of each month of the year. In the case of a negative excess return of the Fund, the Bank shall reimburse the Government an amount equal to 10% of a negative windfall, but not more than 0.01% of the average market value of funds under independent management of the Bank. "

The main goal of the National Bank Trust Deed is to invest financial assets of the National Fund for the purpose of making a profit for the Republic of Kazakhstan (Sec. 1, Art. 1 of the Treaty of the Trust Deed, as amended in accordance with the decision of the Government dated 26 July 2004 " On some issues of trust management of the National Fund of the Republic of Kazakhstan "). Of legislation and of the Trust Deed National Fund makes it clear that the main purpose of the trust management of the National Fund is precisely to provide opportunities to the National Bank properly invest the National Fund for the purpose of making a profit for the Republic of Kazakhstan.

The government has the right to obtain information from the Bank on its activities to manage the National Fund. The government also has the right to demand the transfer of money from the Fund to the republican and local budgets in order and cases provided by law.

Responsibilities of the Government reduced to pay the bank commission for management of the Fund, as well as the provision of the Bank forecasts quarterly income of the Fund and the calculation of the expected loss amounts of compensation republican and local budgets one month before the date of the alleged withdrawal of money (assets).

Along with the above rights and obligations of the parties in the Trust Deed contains other conditions of a more private nature: the appointment of the Legal Adviser, who, if necessary, will represent the interests of the Fund in the resolution of legal disputes, with reporting, auditing, and so on. d.

Art. 883 of the Civil Code provides that the trustee founder transferred certain rights in respect of property (possession, use and disposal). The owner of the property upon trust management is the founder. Kazakh law does not institute a trust in which the trustee becomes the owner of the property along with the settlor. Therefore, it is indisputable that the state made a pact of trust management with the National Bank of Kazakhstan, remains the owner of the transferred property to the trust management of the National Fund.

In view of the fact that the parties to this agreement are the highest public authorities, it is not in use (although it does not exist legal obstacles) such widely used in daily market turnover measure of responsibility, as a penalty, and the only kind of responsibility is damages.

Paragraph 2.3. of the Treaty states: "The Bank is liable for the losses caused to the Fund as a result of improper performance of its obligations hereunder. Obligations for the transactions made by the Bank in excess of the powers conferred upon him or in violation of the restrictions to him, the Bank is due to their property. " The text of this clause is executed successfully. Losses are a form of liability of the debtor to the creditor and, therefore, may be caused by only a contractual party, ie the Government. Quoted rate would make sense if the legislator acknowledged Kazakhstan National Fund for the status of a law. As to the liability of the Bank in excess of the powers conferred upon him or of violation of constraints, such offenses fit into the standard rules of contractual liability, which does not require a special clause. Just lacks any sense in pointing out that the Bank meets its assets. Bank shall be liable according to the rules of the Civil Code on liability of legal persons and no specificity of this responsibility by the governmental order can not be provided. The National Bank of Kazakhstan is a public institution. By virtue of Art. 44 GK government agency responsible not all of its property, as established by law as a general rule, only at its disposal the money. When failure in a public institution of money liable for its obligations is the Government of the Republic of Kazakhstan or the appropriate local agency. Theoretically, we can assume a completely unusual situation. National Bank, in violation of an agreement with the Government, shall be responsible for which he did not have enough money, therefore, for the National Bank in the alternative, the government itself must be responsible to himself.

An important provision of the law governing the relationship between the contract of trust management is the requirement that the National Fund held by the trustee under the Trust Deed shall be accounted for separately from the trustee of the property belonging to him by right of ownership (economic management, operational management) ( n. 2, Art. 885 CC). Therefore, with respect to the National Fund, no matter how was fought really trusted property records by the National Bank, which would rule nor the National Bank took on the subject, always acts cited peremptory norm. Contrary to the item bank rules do not apply on the basis of n. 2 tbsp. 3 of the Civil Code and Art. 4 of the Law of the Republic of Kazakhstan on March 24, 1998 "On normative legal acts", who would rate the Civil Code in the hierarchy above regulations of other acts (except for the Constitution of the Republic of Kazakhstan and constitutional laws). Therefore, the nature of accounting operations conducted by the National Bank in respect of the property of the National Fund, does not affect the status of the state as the owner of the fund and the potential liability of the subject at the expense of the National Fund. Separate account assets trustee trustee is a further confirmation that the owner of such drugs continues to be a state.

From the above it follows that the National Bank, as trustee of funds of the National Fund is not liable for the debts of the state, that is, the creditors of the state can not make claims to the National Bank and the National

Fund to recover from special accounts in the National Bank.

In addressing the issue of State responsibility on its debt at the expense of the National Fund should, first of all, to analyze the role and powers in the matter trustee, ie the National Bank.

The legal status of the National Bank is a complex and unique. The National Bank plays different roles in different situations.

In certain cases, the National Bank acts as a public authority. In this capacity, the National Bank shall issue regulations within its competence, licenses, etc. (Articles 4 and 8 of the Law "On the National Bank of Kazakhstan"). As a regulatory state agency, the National Bank may be responsible for their illegal acts in accordance with specific rules GIC ( Chapter 27 of the Civil Procedure Code of the Republic of Kazakhstan and Art. 72 of the Law "On the National Bank of Kazakhstan"). The National Bank is within its competence, the interests of the Republic of Kazakhstan in relations with central banks and banks of other countries ( Art. 1 of the Law "On the National Bank of Kazakhstan"), he is accountable to the President of the Republic of Kazakhstan ( Art. 3 of the Law "On the National Bank of Kazakhstan") and has the right to issue and enforce regulations ( Art. 4 of the Law "On the National Bank of Kazakhstan").

As a legal entity, the National Bank shall be independent in their activities of other government agencies and the Government. Art. 21 of the Law "On the National Bank of Kazakhstan" specifies that the National Bank within his powers of legislative acts shall be independent in their activities. Bodies and executive authorities do not have the right to interfere in the activities of the National Bank of Kazakhstan, its branches, representative offices and organizations in the implementation of its legislated mandate.

This does not prevent the country to demand from the National Bank report on its operations as trustee for the National Fund, as indicated in the "Trust Deed National Fund." At the same time, the National Bank is working closely with the Government and other public bodies. National Bank coordinates its activities and regularly consults with the Government. And the National Bank and the Government are obliged to inform each other about the alleged actions and results achieved ( Art. 22 of the Law "On the National Bank of Kazakhstan", p. 3 of Art. 24 and p. 16, Art. 58 of the Budget Code of the Republic of Kazakhstan). Chairman of the National Bank participates in meetings of the Government in an advisory capacity ( Art. 22 of the Law "On the National Bank of Kazakhstan"); is a member of the Board of Management National Fund ( Decree of the President of the Republic of Kazakhstan dated December 28, 2004, "On some questions of the Board of Management by the National Fund of the Republic of Kazakhstan").

Under an agreement with government authorities, the National Bank may act as a bank, financial advisor and agent for such bodies ( Art. 23 of the Law "On the National Bank of Kazakhstan").

The National Bank is the bank of the Government of the Republic of Kazakhstan. The National Bank maintains advances the Government of the Republic of Kazakhstan. The National Bank of Kazakhstan shall make payments, carries out other transactions on the accounts of the Government, as well as providing other services to him. In practice, in this context, there should be no questions about the responsibility of the National Bank for the debts of the Government.

In addition to performing the above functions, the National Bank also acts as a financial advisor to the Government of the Republic of Kazakhstan in the development and implementation of policies of government borrowing, the formation of fiscal policy on issues related to the monetary policy of the state ( Art. 25 of the Law "On the National Bank of Kazakhstan"), and also as an agent of the Government of the Republic of Kazakhstan (for example, when servicing them in consultation with the Government of the Republic of government loans ( Art. 26 of the Law "On the National Bank of Kazakhstan").

All civil transactions concluded by the National Bank, subject to state registration in the order established by the Government of the Republic of Kazakhstan ( para. 1, Art. 44 of the Civil Code). The adoption of a public institution of contractual obligations exceeding the approved financing plan for the relevant financial year shall not be permitted ( Art. 105 CC).

Thus, the National Bank has the right to engage in civil transactions, but only after their registration in the prescribed manner. This means that, despite the fact that the National Bank is a legal entity, in accordance with the Budget Code, he is not free to enter into civil law relations (ie, contracts) without the permission of the relevant state bodies. In addition, the National Bank is liable for its debts only from the funds at his disposal, that is, funds left at his disposal by the Government in the form of special contributions to its statutory fund and other special funds. If these funds are not enough, the government is responsible for its debts.

Art. 22 of the Law "On the National Bank of Kazakhstan" provides that the Government shall not be liable for the obligations of the National Bank, as well as the National Bank is not liable for the obligations of the Government, except for the cases when he assumes such responsibility. If we compare the art. 22 of the Law "On the National Bank of Kazakhstan" and n. 1, Art. 44 of the Civil Code, we can draw the following conclusions: (a) The National Bank shall not be liable for the obligations of the State, unless he expressly assumes such responsibility; (B) the state is not liable for the debts of the National Bank, except if the funds of the National Bank is not enough to cover its debts.

This feature often causes difficulties in international commercial arbitration, the western practice which does not share the rights to the property of the state and public entities and, therefore, comes from the natural opportunities that responsibility for the debts of the state government organizations and vice versa.

The source of repayment obligations to the creditors of the state is the state budget. It provides for an annual allowance in respect of obligations of the Government of the Republic of Kazakhstan, central state bodies and their territorial divisions on decisions of courts. In 2004, the reserve was 230 million 913 thousand. Tenge, in 2005 - such a special item in the budget is not contained, it is understood, it is clear that such obligations will be borne by the general reserve of the Government of the Republic of Kazakhstan. Due to the budget shall be canceled publicly guaranteed debt and other obligations of the state. This procedure applies to the fulfillment of obligations in the country. Specific state property can not be subject to penalties, for example, any state-owned enterprise, land from the state fund, etc. Other situation is when the creditor's claim is based on the decision of a foreign state or an international court, and the plaintiff demands execution of the decision by contacting the property of the state, located abroad.

Upon foreclosure on the property of the state, located in another state, the rules of international public law and national legislation of the country where the property is located.

Generally recognized rules of international public law are as follows. The state as a subject of foreign economic activity is immune. Different judicial immunity - without the consent of the state where it can not be brought to court of another state; immunity against provisional remedy - when without the consent of the state can not seize his property; immunity from enforcement of the decision - when you can not, without the consent of the state to foreclose on his property.

In accordance with international law, foreclosure on state property is permitted if it is not covered by immunity. Immunity does not fall under the property involved in commercial activities. In Kazakhstan legislation has no concept of "commercial activity", there is the concept of business (see. Eg., Art. 10 of the Civil Code). There is also the concept of "commercial entities" and "non-profit entities." Business and commercial activities - unambiguous phenomenon. When dividing businesses by commercial and non-commercial is meant not so much the activity of the legal entity - commercial or non-commercial (entrepreneurial or not), and the purpose of its

activities and the fact whether it distributes the income earned between its members or not. We conclude that decide on whether to use one or the other property for commercial purposes, it is necessary based on the content of the specific transaction and not from what kind of entity - commercial or enters into a transaction. Consequently, the fact that the National Bank is in its organizational form non-profit institution, it does not matter to answer the question about the use or commercial exploitation of the National Fund. Any transaction-profit entity, seeks to generate income, should be considered commercial.

We want to emphasize, however, that this applies to the interpretation of legislation of the Republic of Kazakhstan. For disputes over the repossession of state property located in other countries, has a value of understanding of "commercial purposes" contained in the legislation of these countries. Thus, according to the wording of the English State Immunity Act of 1978 of any investment contract, in which the state is not involved as an exercise of sovereign power can be considered as any commercial purpose.

In Art. 2 of the Convention on Jurisdictional Immunities of States and their property, adopted at the fifty-ninth session of the UN General Assembly, November 10, 2004, states that

"1. For the purposes of this Convention:

c) "commercial transaction" means:

«I) any commercial contract or transaction for the sale of goods or supply of services;

ii) any contract for a loan or other transaction of a financial nature, including any obligation of guarantee or indemnity in respect of any such loan or transaction;

iii) any other contract or transaction of a commercial, industrial, commercial or professional nature, with the exception of employment contracts.

2. In determining whether a contract or transaction is a "commercial transaction" under paragraph 1 (c), should, first of all, to the nature of the contact or transaction, but it should also take into account their purpose, unless the parties have agreed to the contract or transaction on this, or if, in the practice of the forum, that purpose is relevant to determining the non-commercial nature of the contract or transaction. "

The importance of this Convention lies in the fact that it contains concepts focused experience and traditions of law enforcement and scientific doctrine. As acceding to the various states it will become for these states legally binding.

Sometimes it is concluded that since the National Fund was established in order to ensure sustainable socio-economic development, accumulation of funds for future generations, reducing the economy's dependence on unfavorable external factors, it follows that the purpose of the Fund no relation to the implementation of the business do not have.

However, the goal and the means of achieving it are two different philosophical categories. The involvement of the National Fund in commercial activity does not contradict, but rather contributes to achieving goals such as "accumulation of funds for future generations, reducing the economy's dependence on unfavorable external factors."

Very significant for understanding the meaning of business is widely covered in the press precedent attempts Swiss company «Noga» to foreclose on Russian foreign assets by the decision of the Stockholm arbitration. These attempts have been made in different countries, but were unsuccessful because in one case the property was protected by diplomatic immunity, and in another - has been attached to the right to run for the state-owned enterprise in the third - Russian military aircraft, which was supposed to seize the exhibition Le Bourget, managed to completely dissolve in the vast airspace shortly before their arrest. However, the legal party to the conflict loomed here is pretty clear. State, giving the contract of immunity, in making an award against it is facing the threat of foreclosure on his property anywhere in the world. Execution depends on the law of the country in which the recovery is made. When foreclosure of the Russian military aircraft did not have legal doubts about the involvement of objects such as airplanes, in commercial activities. Military aircraft in its aims, of course, much less pursue commercial objectives than the property of the National Fund, however, may be used for commercial purposes. In November 2005, Russia managed to rescue from Switzerland paintings Museum of Fine Arts. AS Pushkin, and shortly thereafter, the Russian Foreign Ministry did not recommend the Russian ship "Kruzenshtern", commits a circumnavigation, go to foreign ports for refueling, fearing the imposition of a seizure. Therefore, in our opinion, the action of the National Bank on the orders of the National Endowment indicate the commercial nature of these actions. Commercial orientation of actions of the National Bank and their legal admissibility fully responsible and the Law "On the National Bank of Kazakhstan," in [Art. 70-1](#) which refers to the collection of fees for managing the National Fund (in contrast to the general rules on free provision of services to the state represented by the Government and the Ministry of Finance), and p. 11 of the Rules of formation and use of the National Fund of the Republic of Kazakhstan, approved [by the Decree of](#) the President of Kazakhstan dated January 29, 2001, which expressly stated that the Fund is located in safe and liquid financial assets in order to obtain his savings and investment income. The same is said [Decree](#) of the President of the Republic of Kazakhstan dated September 1, 2005 in which one of the objectives of investment operations in the management of the National Fund named "ensuring return on assets of the National Fund in the long run at a moderate level of risk." Retribution of services and income generation - the main features of the commercial orientation of the transaction.

Thus, the transactions of the National Bank's management and administration of the National Endowment meet the established understanding of the business.

With all the issues set out in the Republic of Kazakhstan faced a London court. The history of this conflict was that Washington sought international arbitration with the Republic of Kazakhstan in favor of AIG Capital Partners, Inc and Real Estate Company approximately $ 10 million. Since Kazakhstan has not fulfilled this decision, the plaintiffs filed a claim for performance of the judicial authorities of the countries where there is a property of the Republic of Kazakhstan free of immunity. This is suitable for the plaintiffs country was the United Kingdom, which are stored in banks National Fund. London Court of 20 October 2005 issued a decision to dismiss the plaintiffs' claims on debt repayment at the expense of the National Fund.

The principal arguments in favor of a court judgment made as follows.

Property of the central bank of the state or other financial department is not property that is in commercial use.

Any assets that the central bank has any proprietary right, regardless of the capacity in which and the purposes for which the bank holds these assets is the property of the central bank.

Using the property of the central bank for public purposes shall be presumed, and the effect of such a presumption should enjoy immunity.

Arguments of this kind we have considered above. We add only the following. Kazakhstan should always build relationships with partners on a solid legal basis. Issued by the London court decision indicates which shaky ground on the possibility of foreclosure of the National Fund is Kazakhstan. The uncertainty of the concept of "commercial activity" in public international law, a different meaning of "property" and its affiliation to a particular subject in a different legal systems, makes the outcome of the trial, where lenders say their demands at the expense of the National Fund, it is difficult to predict. Even within the UK can not be said with certainty that the arguments of the parties to a judge will be an grounds for the same type of solution.

Sooner or later will show the property of the state, in the commercial exploitation of which is no doubt. And while rising interest rates, the cost of lawyers, declining reputation of the state, because the state ought not to hide

from creditors as alimony dodgers.
In order to minimize the risks for the state in such situations requires, of course, increased diligence in rejection of state immunity in the process of making deals with the state, with the possibility of such a failure only when the transaction pursues a major national interest.
You should also make adjustments to the legislation to include regulations on the National Fund indication that the National Foundation funds are not used for commercial purposes, as well as to consolidate the rule that the operations of the National Bank related to trust management of the National Fund are not commercial use. The last rule will be in the nature of legal fictions, but will create a warranty from the repossession of state property abroad.



**Your Name:**

**Enter the code:**
To see the code start typing a message Enter the code of 3 sim oxen displayed in black. Code language - Russian.

update code

Sign up
Log in

**Comment:**

To send

When posting comments should be guided by the rules of the Kazakh legal forum , with the exception of the features arising from the specific mechanism for discussing news.

All rights reserved. Copyright © Ltd. "Company YurInfo" 2011.
At full or partial use of materials the hyperlink to journal.zakon.kz required.
Comments are not related to the topic of messages insulting in relation to other readers or the heroes and publications containing profanity banned and removed. LLP "Company YurInfo" The Republic of Kazakhstan, 050004, Almaty, st. Ryskulov 43-in. Multi-line phone. (727) 380 60 61

Internet Advertising · Contact Us · Jobs

