## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

In re Application of Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. for an Order Directing Discovery from State Street Corporation Pursuant to 28 U.S.C. § 1782

**Index No. 1:15-mc-91059-LTS**

## PETITIONERS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO COMPEL DISCOVERY

Kerrie C. Dent
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4707
Tel: (202) 626 2394
Fax: (202) 626-3737
kdent@kslaw.com

James E. Berger (*pro hac vice*)
Charlene C. Sun (*pro hac vice*)
Nilufar R. Hossain (*pro hac vice admission pending*)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003

*Attorneys for Petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., Terra Raf Trans Traiding Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... II

FACTS ........................................................................................................................... 1

I.  THE EUROPEAN PROCEEDINGS ............................................................. 1

  A.  THE SWEDISH PROCEEDINGS ................................................. 2

II.  STATE STREET AS THE ROK'S ASSET MANAGER ................................. 3

III.  PETITIONERS HAVE MET THEIR OBLIGATION TO MEET AND CONFER.......... 5

ARGUMENT .................................................................................................................. 7

IV.  THE COURT SHOULD COMPEL RESPONDENT'S COMPLIANCE WITH THE SUBPOENAS .................................................................................. 7

  A.  PETITIONERS ARE ENTITLED TO THE REQUESTED DISCOVERY .............................. 8

    1.  Respondent's Objections Concerning The Location Of Responsive Documents Abroad With Foreign State Street Entities Are Meritless ....... 8

      a.  State Street Must Produce All Documents In Its Possession, Custody, And Control ................................................. 8

      b.  State Street Likely Has Possession, Custody And Control Of Responsive Documents Located Abroad ..................................... 10

    2.  State Street's Remaining Objections Cannot Be Used To Block Production or Disclosure ................................................................. 11

    3.  Petitioners' Discovery Requests Are Narrowly Tailored, Directly Relevant, And Not Unduly Burdensome ................................. 16

CERTIFICATE OF CONFERENCE.................................................................................. 20

CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addamax Corp. v. Open Software Found., Inc.*,
  148 F.R.D. 462 (D. Mass 1993) ................................................................12, 13

*Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*,
  319 F.R.D. 422 (D.P.R. 2016) ..................................................................17, 18

*Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co.*,
  201 F.R.D. 33 (D. Mass. 2001) .....................................................................13

*Haseotes v. Abacab Int'l Computers, Inc.*,
  120 F.R.D. 12 (D. Mass. 1988) ...............................................................12, 18

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) .........................................................................18

*Hill v. Homeward Residential*,
  799 F.3d 544 (6th Cir. 2015) ....................................................................16, 17

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) .......................................................................................16

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*
  No. Civ.M19-88 (BSJ), 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) .......................12

*Minis v. Thomson*
  No. MISC. 14-91050-DJC, 2014 WL 1599947, at *5 (D. Mass. Apr. 18, 2014) ...................11

*Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*,
  362 F.3d 401 (7th Cir. 2004) ....................................................................15, 16

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
  305 F.R.D. 630 (D. Or. 2015) .........................................................................13

**Statutes**

28 U.S.C. § 1782 .................................................................................... *passim*

28 U.S.C. § 1782(a) .......................................................................................12

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) .................................................................7, 14, 16, 17

Fed.R.Civ.P. 34 ...................................................................................................................13

Fed. R. Civ. P. 45 ....................................................................................................11, 16, 17

Mass. L.R. 7.1 .................................................................................................................7, 20

Mass L.R. 37.1 ................................................................................................................7, 20

Petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Traiding Ltd. (collectively, "Petitioners" or the "Stati Group") respectfully submit this memorandum of law in support of their motion to compel discovery in accordance with the subpoenas (the "Subpoenas") served on State Street Corporation ("State Street") pursuant to a March 2, 2015 order of this Court (the "1782 Order"). The motion should be granted, for all the reasons that follow.

## FACTS

### I.      THE EUROPEAN PROCEEDINGS

This case concerns Petitioners' efforts to discover information relevant to ongoing and contemplated foreign litigation proceedings concerning, *inter alia*, the ownership and use of certain assets believed to be owned by the Republic of Kazakhstan (the "ROK"). Petitioners hold judgments against the ROK in Sweden, Belgium, France, and the Netherlands; these judgments arise out of an arbitration award (the "ECT Award") rendered in Petitioners' favor and against the ROK by a Stockholm-based arbitral tribunal on December 19, 2013. The ECT Award ordered the ROK to pay Petitioners USD 497,685,101.00, plus interest.[1] The ROK has refused to satisfy the ECT Award, or the judgments recognizing it. Declaration of Nilufar R. Hossain, Nov. 6, 2017 ("Hossain Decl.") ¶ 6.

As a result of the ROK's refusal to satisfy the ECT Award, Petitioners have sought and obtained recognition of the ECT Award in Belgium, France, Luxembourg, and the Netherlands, and the ECT Award is directly enforceable in Sweden because it was rendered in Stockholm, Sweden (the "Swedish Judgment"). Petitioners are now proceeding to enforce the resulting judgments under local law (such proceedings, the "European Proceedings"). Hossain Decl. ¶ 7.

---

[1]    The Tribunal also ordered the ROK to pay USD 8,975,496.40 in legal fees as well as 802,103.24 EUR in arbitration costs.

### A.    THE SWEDISH PROCEEDINGS

As part of these efforts, Petitioners have attached assets they believe to be owned by the ROK in several countries, including Sweden.  Specifically, Petitioners have commenced an action (the "Swedish Proceedings") in the District Court of Stockholm, Division 3 (the "Stockholm Court") in connection with these attachments.  The Swedish Proceedings are categorized as a "sequestration proceeding" under Swedish law.  Based on the Stockholm Court's *ex parte* provisional sequestration order, the Swedish Enforcement Authority rendered a number of attachment orders targeting specific property of the ROK.  These decisions were appealed by the ROK and the National Bank of Kazakhstan ("NBK") to the District Court of Nacka (the "Nacka Court," collectively with the Stockholm Court, the "Swedish Courts") on October 13, 2017.  Hossain Decl. ¶ 8.  The ROK and the NBK seek to vacate these attachments by claiming, *inter alia*, that the assets do not belong to the ROK, but instead are assets that comprise part of the ROK's National Fund (one of its sovereign wealth funds), which the ROK claims belong to the NBK, which it in turn claims to be a separate juridical entity whose assets may not be attached in aid of the Swedish Judgment against the ROK.  Hossain Declaration ¶ 9.

Specifically, on October 20, 2017, the ROK filed a "Reply to Investors' Application for Provisional Sequestration" (the "ROK Reply") in the Stockholm Court.  Hossain Decl. ¶ 10; Ex. D.  Under the Swedish Code of Judicial Procedure, in order to issue a sequestration order, the Swedish Court must find that there is a risk of "sabotage," *i.e.*, that there is a danger that the respondent will seek to transfer assets out of the jurisdiction and/or take other measures to render itself judgment-proof in Sweden.  The ROK Reply notes that the "risk of sabotage should be objectively provable," and asserts that "[a] fundamental condition is that the respondent … have any ability at all to take the foreseen sabotage measure.  **Kazakhstan does not have such an ability**."  Hossain Decl. ¶ 11; Ex. D, at 11 ¶ 54 (Emphasis added).  In sum, the ROK claims that

it lacks the ability to engage in sabotage because the assets at issue are owned and controlled by the NBK, and that it accordingly cannot dispose of National Fund assets.  Hossain Decl. ¶ 12; Ex. D, at 11-12 ¶¶ 54-60.

Petitioners intend to challenge the ROK's claims concerning its ability to dispose, transfer, or otherwise dispose of the attached assets in the Swedish Proceedings.  The question of whether, and how, the ROK can do so is a disputed factual issue that the Swedish Courts will be required to adjudicate based on the parties' respective proffers of evidence.  Hossain Decl. ¶ 13.

While the ROK has not yet filed papers opposing the attachments that have occurred in the European Proceedings outside Sweden, Petitioners expect that it will do so, and that to the extent the assets at issue are held in the name of the NBK, the National Fund, or another of the ROK's sovereign wealth funds, the ROK will make similar claims to the ones it has made in Sweden, *i.e.*, claims that the assets are not owned, controlled, or transferable by the ROK and/or are otherwise not available for purposes of enforcing any of the relevant judgments.  Hossain Decl. ¶ 14.  Each of the European Proceedings will, therefore, require an adjudication of contested propositions of fact and disputed contentions of local law.  The discovery materials sought by the Subpoenas will be of use to Petitioners in litigating these proceedings.  Hossain Decl. ¶ 15.

## II.   STATE STREET AS THE ROK'S ASSET MANAGER

State Street is a nationally chartered bank maintaining its headquarters and principal place of business in this District.[2]  According to publicly available information, State Street serves, or previously served, as a manager for certain of the ROK's assets, including National

---

[2]   Petitioners consider State Street Corporation to include "all subsidiaries, affiliates, branches, offices, agents, officers, and/or any person authorized or purporting to act on its behalf" as defined in the Subpoenas.

Fund assets.  For example, documents published by the NBK show that one or more State Street entities manages or has managed assets of the National Fund.  Declaration of Charlene C. Sun dated February 25, 2015 ("Sun Decl."), ¶ 8.  Specifically, this information suggests that the National Fund's assets are held by the NBK as a trustee, but that the ROK retains sole ownership of those assets, which are derived from the ROK's production and sale of its oil and gas resources.  *Id*.  Petitioners believe that, because State Street holds National Fund assets, its records are likely to contain information that is probative concerning the legal and beneficial ownership of those assets, and that information will be of use to Petitioners in contesting the claims the ROK has made, and is likely to continue to make, in the Swedish Proceedings and the European Proceedings.  Hossain Decl. ¶ 17.

Accordingly, on February 25, 2015, Petitioners applied to this Court for an order authorizing Petitioners to issue the Subpoenas on State Street.  *Id*. ¶ 2.  Petitioners' § 1782 application was granted, and the 1782 Order was issued on March 2, 2015.  Case 1:15-mc-91059-LTS, Ct. Order, March 2, 2015, ECF No. 11; Hossain Decl. ¶ 3; Ex. B.  The 1782 Order authorized Petitioners to serve the Subpoenas, as well as additional subpoenas as necessary.  Petitioners served the Subpoenas on State Street on August 3, 2017.[3]  *Id*. ¶ 4.  The Subpoenas requested various categories of documents and a deposition witness concerning the ROK's assets in the United Kingdom and European Union that are managed by State Street.  *Id*. ¶ 2.

The Subpoenas include 14 document production requests and one deposition request.  Hossain Decl. ¶ 2; Ex. A.  To date State Street has refused to comply with the Subpoenas.  *Id*. ¶ 5.

---

[3]    Owing to a miscommunication between Petitioners and the Court, and further as a result of the fact that the 1782 Order was not entered into the ECF docket, Petitioners did not receive notice of the fact that its application had been granted until July 31, 2017.  The Subpoenas were served promptly upon Petitioners having learned that the 1782 Order had been granted.

### III.   PETITIONERS HAVE MET THEIR OBLIGATION TO MEET AND CONFER

As set forth more specifically in the accompanying Hossain Declaration, over the course of the past three months, Petitioners have attempted to have a meaningful discussion with State Street regarding the nature, scope and timing of the discovery requests contained in the Subpoenas. These attempts have been routinely met with delay and obfuscation, and to date, State Street has not produced any documents or a deposition witness. Hossain Decl. ¶ 18.

- On August 11, 2017, Petitioners and State Street, via their respective counsel, conferred via telephone regarding the Subpoenas. Counsel for both parties agreed that State Street would receive a two-week extension "for its responses and/or objections" to the Subpoenas, until August 31st. *Id.* ¶ 19; Ex. E.

- On August 31, 2017, Petitioners' counsel received a set of "responses" to the Subpoenas that objected to the Subpoenas in their entirety (the "August 31 Objections") and categorically refused to provide any of the requested documents or information. Hossain Decl. ¶¶ 20, 22; Ex. F.

- On September 11, 2017, Petitioners' counsel responded via letter that each of the August 31 Objections lacked any basis in the applicable law and reemphasized Petitioners' willingness to confer (the "September 11 Letter") in an attempt to agree on a scope of production. Hossain Decl. ¶ 23; Ex. G.

- On September 19, 2017, State Street's responded via email that it acknowledged receipt of the September 11 Letter and would review it internally. *Id.* ¶ 25; Ex. H.

  o State Street never provided any response to the legal arguments raised by Petitioners in their September 11 Letter.

5

- Having heard nothing further from State Street, on September 29, 2017, counsel for Petitioners requested an update from State Street's counsel.  Hossain Decl. ¶ 26; Ex. H.  Counsel for State Street responded on the same day stating that, "We are still evaluating the subpoena and your response to our objections.  We will be back in touch."  *Id*. ¶ 27; Ex. H.  Petitioners' counsel responded promptly that they were willing "to be flexible concerning timing" but that it would be preferable to set a deadline.  *Id*. ¶ 28; Ex. H.  State Street's counsel did not immediately respond to Petitioners' message.

- A week later, on October 6, 2017, State Street's counsel stated in an email that "I have heard from our client, the National Bank of Kazakhstan, that they will be intervening in this matter.  I expect for them to be in touch with you shortly.  In light of this development, **I do not have a date at this time**."  *Id*. ¶ 29; Ex. H (emphasis supplied).

- On October 19, 2017, Petitioners' counsel made one final attempt to schedule a discovery conference with State Street's counsel.  *Id*. ¶ 32; Ex. K.  *Id*.

- On October 20, 2017, counsel for State Street indicated it was willing to hold a discovery conference.  Hossain Decl. ¶ 33; Ex. L.  That discovery conference was initially scheduled, at State Street's request (Petitioners had sought an earlier conference), for October 27, 2017.  *Id*. ¶ 34; Ex. L.  State Street, however, rescheduled this conference.  Hossain Decl. ¶ 36-37; Ex. N.

- On the morning of October 30, 2017, the rescheduled date for the conference, State Street **again** requested that the discovery conference be postponed.  *Id*. ¶ 38; Ex. N.  Specifically, State Street indicated that it had decided to retain counsel,

and that counsel would reach out on its behalf.  As of the time this motion was filed, Petitioners have not heard from State Street or any attorney claiming to represent it in connection with this matter.  *Id.* ¶ 39.

To summarize, Petitioners' counsel attempted to confer in good faith with State Street's counsel on multiple occasions and provided flexibility with respect to the timing of the discovery conference and State Street's compliance with the Subpoenas.  Petitioners specifically proposed a conference for purposes of satisfying Local Rules 7.1 and 37.1 on October 19, 2017; State Street has not appeared at the requested conference for over 14 days, *see* L.R. 7.1; L.R. 37.1, and in fact has canceled two conferences at the last minute.  Petitioners accordingly seek an order from this Court compelling State Street to comply with the Subpoenas.

## ARGUMENT

## IV.  THE COURT SHOULD COMPEL RESPONDENT'S COMPLIANCE WITH THE SUBPOENAS

The discovery sought by the Subpoenas is of critical importance to Petitioners' ability to contest the European Proceedings and, specifically, to rebut the ROK's claims in the Swedish Proceedings that the assets that Petitioners have attached do not belong to the ROK.  State Street's objections to the Subpoenas are meritless, and given the likelihood that the documents sought by the Subpoenas are accessible by State Street personnel located in this District, State Street should be ordered to comply with the Subpoenas in full and forthwith.[4]

---

[4]  Petitioners' respectfully submit that State Street's conduct during the meet and confer process was transparently and intentionally designed to delay these proceedings; it is difficult to look at State Street's responses and conclude that it was engaged in a good faith discussion intended to avoid motion practice.  Despite this, and despite Petitioners' view that State Street's failure to engage in the conference process has been tantamount to a failure to respond to a request for a discovery conference, *see* L.R. 37.1(a), Petitioners are not seeking any sanction at this time except for the automatic allowance and grant of this motion.  Petitioners reserve their right to seek additional sanctions at a later time should State Street continue its non-responsive approach to the Subpoenas or persist in its failure to provide the documents and/or deposition witness required thereunder.

A.    **PETITIONERS ARE ENTITLED TO THE REQUESTED DISCOVERY**

1.    **Respondent's Objections Concerning The Location Of Responsive Documents Abroad With Foreign State Street Entities Are Meritless**

a.    *State Street Must Produce All Documents In Its Possession, Custody, And Control*

State Street's August 31 Objections reflect a misunderstanding of the law concerning the discoverability of documents, and that misunderstanding ultimately undermines those objections and renders them meritless.  In its August 31 Objections, State Street contends that the State Street entities with the relevant records are "located outside of the United States" such that the Subpoenas were "[in]appropriately directed to State Street Corporation."  State Street identified these other entities as State Street Global Advisors Limited, State Street Europe Limited and State Street Bank & Trust Company – London Branch (the "Foreign State Street Entities"). After asserting that these entities hold the relevant documents in their possession, State Street cites Fed. R. Civ. P. 45 to contend that it is a non-party protected "from being conscripted into service by litigants issuing, broad overreaching subpoenas."  Hossain Decl. ¶¶ 20-22; Ex. F. Clever language aside, the matter is not so simple as State Street would have it.

First, this Court and others have compelled parties to produce, pursuant to § 1782, documents located overseas.  For example, in *Minis v. Thomson*, a judge of this Court noted that the mere fact "[t]hat some records might be located [abroad] does not bar Petitioners' [1782] Application."  MISC. 14-91050-DJC, 2014 WL 1599947, at *5 (D. Mass. Apr. 18, 2014).  *Minis* involved discovery requests filed by three Tanzanian public officials seeking § 1782 discovery from a Massachusetts corporation and two Massachusetts residents regarding the Massachusetts' parties ownership of land in Tanzania.  In granting the § 1782 petition, the *Minis* Court observed that "[d]iscovery under § 1782 is in accordance with the Federal Rules of Civil Procedure, 28 U.S.C. § 1782(a), **and will entail production of all that is under the possession, custody, or**

**control of Massachusetts residents** . . ." *Id.* (emphasis added).  Under *Minis*, the relevant test was thus not whether the documents were located abroad, but whether the documents were within the "possession, custody, or control of Massachusetts residents."  *Id.*

A New York court applied the same reasoning in a § 1782 case that arose in relation to litigation in Germany.  *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*  involved an attempt to vacate an order that had granted discovery to a German corporation against a New York corporation, McKinsey & Company.  Civ. M19-88 (BSJ), 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006).   In denying McKinsey's request to quash, the court stated that it "rejects McKinsey's suggestion that § 1782 assistance cannot extend to the production of documents located abroad.  There is no such express restriction in the statute, and the Court is unwilling to engraft one onto it."  *Id.*   The court emphasized that "Section 1782 requires only that the party from whom discovery is sought be 'found' here; not that the documents be found here."  *Id.*

State Street's August 31 Objections also overlook the fact that regardless of the actual location of documents, the key concept in federal discovery (the principles of which govern discovery under § 1782, as in all other discovery cases, *see Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 464-69 (D. Mass 1993)), is "control."   Federal courts have routinely recognized that a corporation has "control" of documents when it has "the legal right to obtain [the] documents [at issue]."  *Haseotes v. Abacab Int'l Computers, Inc.*, 120 F.R.D. 12, 14 (D. Mass. 1988) ("individual defendants, as officers, directors, and shareholders . . . can be required to produce documents that are in the possession of the corporations.")*; see also Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 38 (D. Mass. 2001) ("[For] the production of documents pursuant to Fed.R.Civ.P. 34[,] responding parties are required to produce all documents that are in their control.  Control is defined not only as possession, but as

9

the legal right to obtain the documents requested upon demand.")  (citations and quotation marks omitted); *Addamax Corp.*, 148 F.R.D. at 467-69 (compelling production from U.S. subsidiary deemed to have "control" of documents in actual possession of German parent corporation). Indeed, it well-settled that a party may not hide behind the corporate form of its foreign subsidiaries in order to avoid producing documents that are in fact within its actual possession, custody, or control.  *See, e.g.*, *Addamax Corp.*, 148 F.R.D. at 468-69 (ordering corporation to produce documents in possession of a related German corporation); *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 638-39 (D. Or. 2015) (ordering corporation to search for responsive documents and electronically-stored information held by affiliated entities overseas).

Under the rules established by these cases, if documents belonging to the Foreign State Street Entities located abroad are accessible via electronic access or on request by State Street in Massachusetts, those documents are discoverable and should be produced to Petitioners.

> **b.** **State Street Likely Has Possession, Custody And Control Of Responsive Documents Located Abroad**

Publicly available information demonstrates that several U.S.-based executives of State Street serve a dual role as executives with the Foreign State Street Entities.  On information and belief, each of these individuals maintains his or her office in Massachusetts.  Hossain Decl. ¶¶ 40-41; Ex. O, P and Q.  Specifically:

(a) Mr. Ronald P. O'Hanley serves as Vice Chairman of State Street and as President and CEO of State Street Global Advisors.  Hossain Decl. ¶ 40; Ex. O.

(b) Mr. Joseph Hooley is both the Chairman and CEO of State Street and a Director of State Street Bank & Trust.  Hossain Decl. ¶ 40; Ex. P.

(c) Ms. Karen Keenan serves as Executive Vice President of State Street and as Chairman of State Street Europe.  Hossain Decl. ¶ 40; Ex. Q.

Based on their high-ranking positions within State Street and the Foreign State Street Entities, these Massachusetts-based executives likely have access – from their computers in the United States or upon demand – to documents that are held by the Foreign State Street Entities in order to execute fully their duties.   Accordingly, Petitioners believe that each of these individuals likely has possession, custody, or control of documents concerning their work for the Foreign State Street Entities, within the meaning of governing law, and that each can likely access, while present in his / her respective office in Massachusetts, information they require or wish to access in connection with their work for the Foreign State Street Entities.  Given the prevailing case law and the location of these executives in Massachusetts, State Street's arguments concerning the location of documents abroad lacks any colorable legal basis.[5]

##### 2.      State Street's Remaining Objections Cannot Be Used To Block Production or Disclosure

State Street's remaining objections to the Subpoenas are equally without merit:

### State Street's Objection to Production No. (i):

(i) fail to comply with the geographic limitations set forth in Fed. R. Civ. P. 45(c);

Petitioners designated Regus-TSG Reporting, a Boston-based entity, to receive all documents produced by State Street to comply expressly with the geographic limitations and as

---

[5]     State Street has not disputed that these individuals have control of the documents sought by the Subpoenas. Should State Street later dispute this, or should the Court find that the inference presented by Petitioners is not strong enough, Petitioners respectfully request leave to conduct a deposition pursuant to Fed. R. Civ. P. 30(b)(6) to investigate the issue of whether any State Street personnel based in Massachusetts has possession, custody, or control of documents responsive to the Subpoenas.  Petitioners will, if preferable to the Court, make a formal motion to this effect, though Petitioners respectfully submit that the Court's initial order authorizes Petitioners to serve supplemental subpoenas, and that a subpoena intended to investigate the location of documents is contemplated by and should be authorized under that order.  *See* Hossain Decl. ¶ 2, Ex. A.

the venue for any deposition.  Hossain Decl. ¶ 2; Ex. A.  Petitioners note that it remains willing

to afford any necessary accommodation to State Street in order to minimize or eliminate any

inconvenience involved in the production of documents or the examination of a deposition

witness.

### State Street's Objection to Production No. (ii):

(ii) seek discovery that is not permissible under 28 U.S.C. § 1782 (citing *Kestrel
Coal Pty. Ltd. v. Joy Glob., Inc.*, 362 F.3d 401, 404 (7th Cir. 2004);

State Street's reliance on *Kestrel Coal* is misplaced.  First, as Seventh Circuit authority, it

does not bind this Court or this case.  More importantly, however, it is factually and procedurally

inapposite: In *Kestrel Coal*, the court refused to allow a party to take discovery under § 1782

because a judge in Australia had already determined that the evidence was not necessary at that

time in order for the Australian case to proceed.  The court's reasoning turned, largely on the

court's assessment that granting the § 1782 application would enable an end-run around the

discovery limitations imposed in the foreign litigation in Australia that served as the predicate for

the § 1782 proceeding.  The *Kestrel Coal* court reasoned that:

> [The Australian judge] already has analyzed Kestrel's need for the
> documents and held that it has none—at least not yet.  If, as [that judge]
> concluded, Kestrel does not need these documents to make out its claim,
> then no purpose would be served by their production in the United States
> under § 1782.  If, however, the documents become important later, the
> most sensible recourse is a renewed application to the Australian court.

*Kestrel Coal*, 362 F.3d at 406.

*Kestrel Coal* did not establish a black letter rule that a party could not subpoena a parent

company under 28 U.S.C. § 1782 in order to access a subsidiary's documents.  In *Kestrel*, the

court, in fact, observed that the parent company "may have originals or copies of some

responsive documents" even if such documents "generally are in the subsidiaries' possession." *Id.* at 406. The court declined to grant the discovery application due to the express preferences of the foreign court with respect to the scope of discovery since "§ 1782 may not be used to second-guess the judge handling the underlying suit." *Id.* at 403. The Swedish Courts have not issued any parallel discovery rulings to which this court needs to defer. *Kestrel Coal* is therefore inapposite factually and legally. Finally, *Kestrel Coal* was decided before the Supreme Court issued its decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), which has, since its issuance, provided the governing standard for whether discovery may be granted under § 1782.

**State Street's Objection to Production No. (iii):**

(iii) fail to specify the person who is being subpoenaed, as required by Fed. R. Civ. P. 45(a)(1)(A)(iii), but rather purport to require State Street to identify a corporate designee (*citing Hill v. Homeward Residential*, 799 F.3d 544 (6th Cir. 2015);

State Street's third objection appears to assert that Petitioners are not entitled to seek the deposition of a corporate representative. As such, it erroneously relies on Fed. R. Civ. P. 45(a)(1)(A)(iii), when the relevant authority is Fed. R. Civ. P. 30(b)(6). Specifically, State Street cites *Hill v. Homeward Residential, Inc.* in support of the proposition that State Street cannot be required "to identify a corporate designee," but that case – a Sixth Circuit decision that does not bind this Court – involved an attempt to compel a corporate representative to testify **at trial** pursuant to Rule 45. 799 F.3d 544 (6th Cir. 2015). In *Hill*, the plaintiff, who had failed to exercise its right to obtain deposition testimony during discovery under Rule 30(b)(6), later attempted to subpoena a corporate representative to provide trial testimony. *Id.* at 553. The court rejected the plaintiff's request. *Id. Hill* has no bearing on Petitioners' deposition request

13

before this Court since Petitioners are seeking deposition testimony from a corporate designee prior to trial in accordance with standard federal discovery practice.  Fed. R. Civ. P. 30(b)(6).

**State Street's Objection to Production Nos. (iv)-(v):**

(iv) impose undue burden and expense on State Street;

(v) are overbroad, insofar as they seek documents and information that is outside the scope of and/or not relevant to the above-referenced action, nor reasonably calculated to lead to the discovery of admissible evidence;

Petitioners issued Subpoenas containing a total of 14 document production requests that are narrowly tailored to identify evidence relevant to the contested issues of fact that have arisen in Sweden and that are expected to arise in the other European Proceedings.  Given that State Street has failed to identify any specific burden and refused to suggest any narrowing proposals, its overbreadth and burden objections are not well taken and simply do not justify State Street's refusal to provide **any** of the requested discovery.  State Street has established no basis for asserting that these requests are overbroad or impose an unreasonable burden.  Courts have found that:

> [T]he mere statement by a party that the interrogatory [or request for production] was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection.  On the contrary, the party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive.

*Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 430 (D.P.R. 2016) (citations and quotation marks omitted).  As the party resisting production, State Street "bears the burden of establishing lack of relevancy or undue burden" and "boilerplate objections" such as those set forth in State Street's August 31 Objections falls far short of meeting this standard.  *Id*. at 427 (rejecting objections to discovery and granting order to compel production).  *See also Heraeus Kulzer, GmbH v. Biomet, Inc*., 633 F.3d 591, 598 (7th Cir. 2011)

("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery.").

### State Street's Objection to Production Nos. (vi):

(vi) contain definitions, instructions, and requests that they are vague and/or ambiguous;

State Street's sixth objection, if accepted at face-value, turns on a matter that could have been resolved easily through discussions with Petitioners' counsel had State Street meaningfully participated in the requested discovery conference. Such an objection cannot, at this point, be used to block discovery.

### State Street's Objection to Production Nos. (vii)-(viii), (xii):

(vii) seek confidential and proprietary financial information;

(viii) require disclosure [of] confidential commercial information;

(xii) seek information protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, doctrine or immunity.

State Street's seventh, eighth, and twelfth objections rely on blanket assertions of confidentiality and privilege without any indication of the nature of the documents that State Street is withholding. Petitioners note that they are not seeking to compel disclosure of any privileged information, and Petitioners have indicated to State Street their willingness to enter into an appropriate confidentiality agreement to protect any confidential or sensitive commercial information. *See Haseotes*, 120 F.R.D. at 14 (granting motion to compel production of confidential information because "defendants have failed to show that a protective order would not adequately protect their legitimate interests.").

**State Street's Objection to Production Nos. (ix)-(xi):**

(ix) seek information that may be discovered from the parties to this action, or from another third party, or by less intrusive means;

(x) seek information that is more readily available from sources other than State Street;

(xi) call for information already in your possession, custody or control;

State Street's ninth, tenth, and eleventh objections focus on Petitioners' alleged ability to obtain the subpoenaed information from other parties.  Petitioners, however, have no access to internal documents of State Street concerning the relationship of State Street with its client, the NBK, which serves as the trustee/custodian of the ROK's National Fund and whose activities with respect to the National Fund's assets is one of the subjects of the contested European Proceedings.  Petitioners are similarly unaware of any third party that would have any such access either, and State Street has not suggested any.  The information available to Plaintiff suggests that State Street is a custodian bank that manages the National Fund's assets, and would thus be in possession of unique documentation concerning the ownership and use of those funds, which in turn would provide critical evidence required by Petitioners to address the claims of the ROK and the NBK in the European and Swedish Proceedings.  Hossain Decl. ¶¶ 16-17.  State Street has not denied this.

> 3.      **Petitioners' Discovery Requests Are Narrowly Tailored, Directly Relevant, And Not Unduly Burdensome**

As noted immediately above, publicly available information indicates that State Street manages, or has previously managed, assets of the National Fund.  Sun Decl. ¶ 8; Hossain Decl. ¶¶ 16-17.  Petitioners' discovery requests were narrowly tailored and seek information that is directly relevant to State Street's management of assets on behalf of the National Fund and/or the

National Bank.  State Street's objections to the Subpoenas are meritless.  The Court should therefore issue an appropriate order directing it to comply with the Subpoenas in accordance with their terms.  Petitioners' Subpoenas sought the following documents:

### Request for Production No. 1:

All documents and communications evidencing or concerning State Street's management role with respect to the National Fund.

These documents are necessary to help the courts in the European Proceedings and the Swedish Proceedings determine whether the assets attached by Petitioners are in fact owned by the ROK.

### Request for Production No. 2:

All documents evidencing or concerning any and all accounts maintained by State Street at any office or branch that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation in the name, or on behalf, of the National Bank, including but not limited to accounts held by the National Bank in its capacity as manager of National Fund assets.

*See* Petitioners' Response to Request for Production No. 1 above.

### Request for Production No. 3:

All documents evidencing or concerning any and all accounts maintained by State Street at any office or branch that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation in the name, or on behalf, of NIC, including but not limited to accounts held by NIC for purposes of the management of the assets of the National Fund.

*See* Petitioners' Response to Request for Production No. 1 above.

### Request for Production No. 4:

All documents and communications concerning or related to any asset of the ROK that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation, whether that asset is owned by the ROK directly, or indirectly, in whole or in part, as sole owner or jointly with others, either of record or beneficially.

*See* Petitioners' Response to Request for Production No. 1 above.

17

**Request for Production No. 5:**

All documents and communications concerning or related to any debt owed to the ROK by any person or entity that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation.

*See* Petitioners' Response to Request for Production No. 1 above.

**Request for Production No. 6:**

All documents and communications concerning or related to any debt owed to the National Bank, in its capacity as fiduciary manager or trustee of the National Fund, by any person or entity that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation.

*See* Petitioners' Response to Request for Production No. 1 above.

**Request for Production No. 7:**

All documents and communications concerning or related to any debt owed to NIC, in its capacity as manager of the assets of the National Fund, by any person or entity that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation.

*See* Petitioners' Response to Request for Production No. 1 above.

**Request for Production No. 8:**

All documents and communications concerning or related to any debt owed by the ROK to any person or entity that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation.

*See* Petitioners' Response to Request for Production No. 1 above.

**Request for Production No. 9:**

All documents evidencing or concerning any and all CHIPS, Fedwire, or SWIFT messages received or transmitted by one of State Street's offices or branches that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation relating to transactions identifying the ROK as the beneficiary, originator, or any other related party to a transaction.

*See* Petitioners' Response to Request for Production No. 1 above.

**Request for Production No. 10:**

All documents evidencing or concerning any and all CHIPS, Fedwire, or SWIFT messages received or transmitted by one of State Street's offices or branches that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation relating to transactions identifying the National Bank (in its capacity as fiduciary manager or trustee of the National Fund) as the beneficiary, originator, or any other related party to a transaction.

*See* Petitioners' Response to Request for Production No. 1 above.

**Request for Production No. 11:**

All documents evidencing or concerning any and all CHIPS, Fedwire, or SWIFT messages received or transmitted by one of State Street's offices or branches that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation relating to transactions identifying NIC (in its capacity as manager of the assets of the National Fund) as the beneficiary, originator, or any other related party to a transaction.

*See* Petitioners' Response to Request for Production No. 1 above.

**Request for Production No. 12:**

All documents and communications concerning or related to any collateral or security provided in connection with the formation of any debt owed by the ROK to any person or entity that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation.

*See* Petitioners' Response to Request for Production No. 1 above.

**Request for Production No. 13:**

All documents and communications concerning or related to any collateral or security provided in connection with the formation of any debt owed by the National Bank (in its capacity as fiduciary manager or trustee of the National Fund) to any person or entity that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation.

*See* Petitioners' Response to Request for Production No. 1 above.

**Request for Production No. 14:**

All documents and communications concerning or related to any collateral or security provided in connection with the formation of any debt owed by NIC (in

its capacity as manager of the assets of the National Fund) to any person or entity that is subject to the territorial jurisdiction of the Courts of the United Kingdom and/or any other EU nation.

*See* Petitioners' Response to Request for Production No. 1 above.

The litigation in aid of which Petitioners seek these documents – which includes litigation in European jurisdictions where assets have been attached and the ROK has contested those attachments – is currently underway, underscoring the urgency of Petitioners' discovery requests.  Petitioners anticipate that the information State Street will produce will be relevant to the issues that are emerging in the European Proceedings and the Swedish Proceedings with respect to adjudicating the rightful ownership of those assets.

## CERTIFICATE OF CONFERENCE

Petitioners hereby certify that they have, as described above, attempted repeatedly to confer with Respondent's counsel to resolve or narrow the issues raised in this motion.  State Street has not appeared for a conference despite several requests to do so.  Counsel for Petitioners accordingly certify that they have complied in good faith with Massachusetts Local Rules 7.1(a)(2) and 37.1(b).

## CONCLUSION

For all of the foregoing reasons, Petitioners respectfully request that the Court grant the relief sought herein in its entirety.  Petitioners request that the Court enter an order:

(a) Compelling State Street to produce all documents responsive to Petitioners' First Set of Requests within ten days of the entry of the Order granting this Motion; and

(b) To appear for a deposition within fourteen days of the issuance of the Order granting this Motion, or at another date thereafter mutually agreed upon by the parties.

Dated:  November 6, 2017
New York, New York

Respectfully submitted,


        */s/ Kerrie C. Dent*

Kerrie C. Dent
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4707
Tel:  (202) 626 2394
Fax:  (202) 626-3737
kdent@kslaw.com

James E. Berger (*pro hac vice*)
Charlene C. Sun (*pro hac vice*)
Nilufar R. Hossain (*pro hac vice admission pending*)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
jberger@kslaw.com
csun@kslaw.com
nhossain@kslaw.com

*Attorneys for Petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., Terra Raf Trans Traiding Ltd.*

21