UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Application of Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. for an Order Directing Discovery from State Street Corporation Pursuant to 28 U.S.C. § 1782 | No. 1:15-mc-91059-LTS |

# DECLARATION OF JAMES E. BERGER

1. I am a partner of King & Spalding LLP, attorneys of record to Petitioners herein. I am an attorney at law admitted to practice in New York and the District of Columbia, and I have been admitted to practice *pro hac vice* in connection with this proceeding. I have personal knowledge of the facts stated herein.

2. This proceeding arises out of the ROK's continuing refusal to satisfy an arbitration award ("the Award"), which was rendered by a Stockholm-based tribunal as a result of the ROK's expropriation of Petitioners' business in Kazakhstan and which totals over $500 million. Following the tribunal's issuance of the Award, the ROK commenced a proceeding in the Svea Court of Appeal in Stockholm (the "Svea Court") seeking to have the Award set aside on a number of grounds.

3. The ROK ultimately amended its set-aside claim in the Svea Court to claim that Petitioners had obtained the Award by fraud; the Svea Court rejected this claim in its entirety and refused to set aside the Award. The Svea Court also denied the ROK leave to appeal its ruling and awarded Petitioners over $3 million based on its legal costs in the Svea Court proceedings.

4.  Despite the Svea Court's refusal to grant the ROK leave to appeal its judgment, the ROK nonetheless attempted to bring the matter before the Supreme Court of Sweden through a motion for extraordinary review; that motion was also denied. The Award is final and not subject to any further appeal.

5.  Petitioners have commenced proceedings in the U.S. District Court for the District of Columbia (the "DC Court") seeking recognition of the Award in the United States. After that proceeding was fully briefed, the ROK requested leave of the DC Court to introduce its fraud defense and related evidence in that proceeding; the DC Court, in a ruling dated May 11, 2016, rejected the ROK's request.

6.  Petitioners sought and obtained recognition of the Award in the High Court of Justice in London (the "London Court") on February 28, 2014. The ROK has subsequently sought to vacate the London Court's recognition order, and sought leave to amend its claim before the London Court to include its fraud claim. Unlike the DC Court, the London Court allowed the ROK to introduce its fraud-based defenses, and ruled on June 6, 2017 that the ROK's fraud allegations should be tried. The trial in the London Court will be held beginning in November 2018. Because the London Court sits as a court of secondary jurisdiction under the New York Convention, its ruling will be limited to whether the Award may be enforced in England as a matter of English law, will have no effect on the validity of the Award (which was rendered under Swedish law, and has been held to be valid by the Swedish courts) and will have no effect outside the United Kingdom.

7.  Following the Svea Court's refusal to set aside the Award, Petitioners began taking steps to enforce the Award in Sweden. Specifically, throughout September and October 2017, Petitioners attached a series of assets in Sweden. Petitioners later commenced similar

2

proceedings in the Netherlands, Belgium and Luxembourg around the same time, as detailed below.  One of the focuses of these enforcement efforts was to attach, and ultimately execute, assets that Petitioners understand to be part of the ROK's "National Fund," which Petitioners understand to be an unincorporated agglomeration of Kazakh state assets.  Publicly-available documents suggest that the assets comprising the National Fund are in the custody of the National Bank of Kazakhstan ("NBK"), the ROK's central bank, but that those assets are, under Kazakh law, owned by the ROK at all times and for all purposes.  The basis of Petitioners' understanding concerning the ownership of National Fund assets is explained in the Declaration of the February 25, 2015 Declaration of Charlene C. Sun, filed herein as ECF Document No. 5.

      a.   The Swedish Proceedings

On the basis of an *ex parte* judgment rendered by Stockholm District Court (the "Stockholm Court") on August 21, 2017 (allowing enforcement of the Award and attachment of all and any of the ROK's property in Sweden up to the full value of the Award), the Swedish state bailiff has attached shares owned by the ROK in 33 publicly traded Swedish companies (with a current market value of about $96.5 million). These shares form part of the portfolio of the ROK's National Fund, an unincorporated sovereign wealth fund of the Kazakh state, and are held by the Swedish bank SEB as a custodian on behalf of Bank of New York Mellon ("BNY") (which, as stated above, acts a global custodian for the ROK). The Swedish bailiff has also attached certain subscription rights, dividend payments and tax refund receivables with respect to some of the said shares. The ROK, together with the NBK as an intervening party, have filed numerous appeals against the said bailiff's decisions, which appeals are currently being considered by the Nacka District Court in Stockholm (the "Nacka Court").  A decision from the Nacka Court on the ROK's appeals of the bailiff's decisions is expected by the end of December

2017.  The ROK and NBK have separately filed various stay applications with respect to the bailiff's attachment decisions, but these applications have been dismissed by Nacka Court.

The ROK has also sought to vacate the Stockholm Court's August 21, 2017 judgment. On October 20, 2017, the ROK filed a reply to Petitioners' motion for provisional sequestration (or attachment), a true and correct copy of which is attached hereto as Exhibit A.  In its reply, the ROK argued, *inter alia*, that the shares in question are owned by the NBK, rather than the ROK itself.  Ex. A at ¶¶ 6, 55-61.  The ROK further acknowledged the adjudicative nature of the sequestration proceedings, asserting that "the proceedings regarding sequestration before the District Court are not enforcement proceedings …. An application for sequestration is filed with a court, which has to try it if there is a legal basis for the requested action." Ex. A, at ¶ 28. Petitioners filed a response to the ROK's October 20, 2017 reply on November 13, 2017, and the ROK is entitled to file another responsive submission on December 4, 2017.  A decision from Stockholm Court on the ROK's application to vacate the judgment is expected in early 2018.

    b. The Dutch Proceedings

On September 8, 2017, the Amsterdam District Court ("Amsterdam Court") issued an *ex parte* judgment allowing attachment of certain property owned by ROK in the Netherlands, including, *inter alia*, certain assets held by the Amsterdam branch of BNY's Belgian subsidiary, BNY Mellon SA/NV, concerning the savings portfolio of the National Fund, as well as certain shares held by Samruk-Kazyna JSC ("Samruk") in Dutch entity KMG Kashagan BV, respectively.  The Dutch bailiff thereafter levied a number attachments in execution of the said *ex parte* judgment of the Amsterdam Court.  Consequently, both Samruk and NBK (as an intervening third party) have contested the said attachments, with a hearing on the former application scheduled for December 5, 2017.  In the meantime, the ROK is separately opposing

the granting of exequatur with respect to the Award in the Netherlands, and a hearing on that application is expected to take place between February-July 2018. A true and correct English translation of Samruk's submission to the Amsterdam Court challenging the attachment is attached hereto as Exhibit B.

      c. The Belgian Proceedings

On October 11, 2017, the Brussels Court of First Instance ("Brussels Court") issued an *ex parte* judgment, allowing attachment of certain assets held by BNY's Belgian subsidiary, BNY Mellon SA/NV, concerning the savings portfolio of the National Fund. The NBK has moved to intervene in the Belgian Proceedings, and claimed in support of its petition for intervention, *inter alia*, that it is juridically separate from the ROK, that the attached assets belong to it as opposed to the ROK, and thus cannot be executed in aid of a judgment against the ROK, and that it has been prejudiced by the attachment. Petitioners contest each of these claims. The ROK has separately opposed recognition of the Award in Belgium. A true and correct copy of a letter from the NBK's counsel to Petitioners' Dutch counsel setting forth the NBK's position, as well as a true and correct English translation of its intervention application, is attached hereto as Exhibit C.

      d. The Luxembourg Proceedings

On August 30, 2017, Luxembourg District Court made an *ex parte* order recognizing and enforcing the Award in Luxembourg. The ROK has filed an appeal from the said order, and Petitioners will have a right to respond at a yet to be agreed date in January 2018. No hearing dates are scheduled otherwise. In the meantime, in August 2017, a Luxembourg bailiff levied attachments on the ROK's property in Luxembourg, including certain receivables due to the ROK from four Luxembourg incorporated companies, as well as certain shares owned by the

ROK in one of those companies (which shares are not related to the National Fund).  None of the aforementioned third parties has yet filed any oppositions or motions with respect to these attachments.

8. The ROK, on October 5, 2017, filed an action against Petitioners in the United States District Court for the District of Columbia claiming, in substance, that its enforcement efforts constitute a pattern of racketeering (the "RICO Complaint").  While Petitioners intend to forcefully contest the claims set forth in the ROK's RICO Complaint, the RICO complaint has not as of this time been served on any of the Petitioners, and no answer or responsive pleading is due at this time.  All of the defendants named in the RICO Complaint are located outside the United States, and will need to be served via applicable rules governing international service of process.

9. The ROK has not, as part of its RICO Complaint, sought emergency or interlocutory relief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on
December 4, 2017

_____
James E. Berger