# EXHIBIT B

**LOYENS LOEFF**

[informal translation from Dutch]

DRAFT dated 8 November 2017

**SUMMONS IN SUMMARY PROCEEDINGS BEFORE THE COURT OF AMSTERDAM FOR THE LIFTING OF PRE-JUDGMENT ATTACHMENT**

**ON THIS, THE** day of       two thousand and seventeen, at the request of:

SAMRUK-**KAZYNA JSC**, a company under foreign law, having its registered office in Astana, Kazakhstan, and principal place of business at (010000) Astana, Kazakhstan, in Emerald Towers, Block B, 8 Kunayev Street, which has elected as address for service in these summary proceedings the offices of Loyens & Loeff N.V., Frederik Roeskestraat 100 in Amsterdam (1076 ED), from which firm J. van den Brande and H. van Druten will act as its legal representatives, having been appointed as such,

I,

**HAVE SUMMONED:**

1  Mr **ANATOLIE STATI**, residing in Chisinau Moldavia;

2  Mr **GABRIEL STATI**, residing in Chisinau, Moldavia;

3  **ASCOM GROUP S.A.,** a company under foreign law, with its registered office in Chisinau, Moldavia; and

4  **TERRA RAF TRANS TRAIDING LTD.**, a company under foreign law, having its registered seating Gibraltar;

which has elected as address for service in this matter the offices of NautaDutilh N.V., Beethovenstraat 400, Amsterdam (1082 PR), in the Netherlands, from which firm G.J. Meijer and J.M. Hummelen will act as their counsel, at which address I have served my summons (with exhibits), leaving a copy thereof with:

**LOYENS LOEFF**

**TO APPEAR:**

on [●]two thousand and seventeen, in the [●morning/afternoon] at [●] ([● time of day in letters]), either in person or represented by counsel in summary proceedings at a public hearing of the court of summary proceedings of the District Court of Amsterdam, which hearing shall be held in one of the rooms of the said Court on the Parnassusweg 220 (main entrance, tower G on the Frederik Roeskestraat) in Amsterdam (1076 AV), correspondence address P.O. Box 84500, 1080 BN Amsterdam;

**GIVING NOTICE THAT**:

(a)   if a respondent fails to appear at the hearing in person or represented by counsel and if the prescribed periods and formalities have been observed, the court will declare the respondent in default and award the claim, unless the court considers that claim to be unjustified or unfounded;

(b)   if at least one of the defendants appears at the hearing in person or represented by counsel, a single ruling will be passed in respect of all parties that will be deemed to be a ruling in a defended action;

(c)   upon the appearance of each of the defendants in the proceedings a court fee will be charged that is payable within four weeks from the date of the appearance;

(d)   the amount of the court fee is specified in the most recent annex to the Dutch Court Fees Act, the text of which is published, inter alia, on the website: www.kbvg.nl/griffierechtentabel;

(e)   a court fee established by or pursuant to law is charged for a person of limited means, provided that he has submitted prior to the date on which the fee is charged of:

   (i)   a copy of the decision to grant legal aid provided for in Article 29 of the Dutch Legal Aid Act, or if this is not possible due to circumstances which cannot reasonably be attributed to him, a copy of the application for legal aid as provided for in Article 24 (2) of the Dutch Legal Aid Act, or
   (ii)  a declaration by the Board of the Legal Aid Council as provided for in Article 7 (3)(e) of the Dutch Legal Aid Act that his income does not exceed the amounts provided for in the Order in Council pursuant to Article 35 (2) of that Act,

(f)   that defendants appearing in the person of the same lawyer and submitting identical defences will only be charged a single joint court fee pursuant to Article 15 of the Court Fees (Civil Cases) Act.

**IN ORDER TO:**

hear it claimed and moved by Samruk-Kazyna JSC (**Samruk**) on the following grounds.

**I   INTRODUCTION**

1   Defendants (jointly: **Stati et al**.) have levied prejudgment attachment on property belonging to Samruk, when Samruk is not a debtor of Stati et al.

2   Stati et al. have levied prejudgment attachment on all shares held by Samruk in the capital of the Dutch private limited company KMG Kashagan B.V. (**KMGK**) (the **Pre-Judgment Attachment**, Exhibit 1). The Pre-Judgment Attachment was levied in respect of claims that Stati et al. allegedly have on the basis of an arbitral award dated 19 December 2013, as supplemented on 17 January 2014 (the **Arbitral Award,** Exhibit 2). However, Samruk was not a party in the arbitration procedures in question. Only the Republic of Kazakhstan was a party in those arbitration proceedings.

3   Stati et al. wrongly take the view that Samruk is a "part" of the Republic of Kazakhstan and that it is therefore entitled to levy attachment on property belonging to Samruk. The assertions made by Stati et al. in this regard are ill-founded.

4   Due to the fact that Samruk is not part of the Republic of Kazakhstan, nor a debtor of Stati et al., the attachment levied against it must be lifted as quickly as possible.

**II   THE ATTACHMENT**

5   The Pre-Judgment Attachment was levied on the basis of a decision of the court in summary proceedings of this Court dated 8 September 2017 (the **Decision**, Exhibit 3). The Decision also grants leave to levy prejudgment attachment on possible assets of the Republic of Kazakhstan in the Netherlands. The (amended) application of Stati et al. for leave to attach is dated 30 August 2017 and forms the basis for the Decision (the **Attachment Application,** Exhibit 4).

6   The claim for which leave was granted, including interest and costs, was estimated by the court in summary proceedings of this Court at USD 557,656,650 and EUR 992,520.

7   On 14 September 2017, at the request of Stati et al., using the Decision, Prejudgment Attachment was levied on all shares of Samruk in KMGK. Those shares in KMGK currently represent a value of approximately USD 5,283,000,000.

**III   THE ARBITRAL AWARD**

8   The claims in respect of which Stati et al. levied attachment stem, they contend, from the Arbitral Award. The Arbitral Award was given in arbitration proceedings between Stati et al. and the Republic of Kazakhstan (the **Arbitration Proceedings**). In the Arbitral Award, the Republic of Kazakhstan was ordered to pay certain amounts to Stati et al.

**LOYENS LOEFF**

9     In the Decision, the court in summary proceedings acknowledged that the relief sought to levy prejudgment attachments was related to Stati et al. claims based on the Arbitral Awards:

> "2.7. As security for the recovery of their claim <u>on the basis of the Arbitral Award and the Supplementary Arbitral Award, in the amount of USD 506,660,579.40 and EUR 802,103.24 respectively</u>, plus the usual margin for interest and costs, Applicants wish to levy prejudgment attachment against the respondents on a bank and ten other third parties, and on shares."

[emphasis added, counsel]

10     Samruk was not a party in the Arbitration Proceedings, nor was it ordered by the arbitral tribunal in the Arbitral Award to make any payment to Stati et al.

11     For the avoidance of doubt, if Stati et al. had believed that they had a claim on Samruk, they should have included Samruk in the Arbitration Proceedings. Stati et al. did not do so because Samruk is not liable. Be that as it may, it is a fact that Stati et al. did not institute the Arbitration Proceedings against Samruk and for that reason, Stati et al. have no claim on Samruk under the Arbitral Award.

## IV    STATUS OF SAMRUK

12     Samruk is an independent legal entity with its equity divided into shares. Samruk was incorporated under the law of Kazakhstan and its legal status is accordingly also determined under that law.

13     For the simple reason that Samruk is a separate legal entity, the Pre-Judgment Attachment should not have been levied against it.

### IV.1    Samruk is not part of the Republic of Kazakhstan

14     Stati et al. assert the following in paragraphs 65 and 66 of the Attachment Application:

> "65. Samruk is a national holding company for Kazakhstan's investments, in the form of a 'Joint Stock Company'.
>
> 66. Kazakhstan has adopted legislation in relation to the governance of Samruk. This legislation provides, inter alia, that: i) Kazakhstan is the sole shareholder of Samruk; ii) the chairman of the Management Board must be the Prime Minister of Kazakhstan; and iii) that Samruk must carry out its activities in the interest of Kazakhstan as its sole shareholder. In the light of these circumstances, Samruk must be deemed to be part of the State (Kazakhstan), <u>even if it is a separate legal entity</u>."

[emphasis added, counsel]

15  In paragraph 66 of the Attachment Application, Stati et al. have stated in their own words that Samruk is a separate legal entity of the Republic of Kazakhstan. However, as a "separate legal entity" Samruk is allegedly "part" of the Republic of Kazakhstan and therefore, according to Stati et al., liable for the debts of the Republic of Kazakhstan. The line of reasoning taken by Stati et al. is incomprehensible. The concept of "part" they apply has no legal meaning whatsoever. The fact that Samruk is a separate legal entity means in itself that in a legal sense, it is not part of the Republic of Kazakhstan.

16  In short:

  (i)  the alleged Stati et al. claims as stated in the Attachment Application are based entirely on the Arbitral Awards;

  (ii)  Samruk is not and was not involved in the Arbitration Proceedings; and

  (iii) Samruk was not ordered in the Arbitral Award to pay any sum of money to Stati et al.

17  Stati et al. take the view that they were nevertheless able to levy the Pre-Judgment Attachment against Samruk because it must be "regarded" as "part of the Republic of Kazakhstan. However, Stati et al. have not:

  (i)  provided legal substantiation as to why Samruk must be regarded as "part" of the Republic of Kazakhstan;

  (ii)  explained in what sense Samruk is purportedly "part" of the Republic of Kazakhstan; and

  (iii) explained the legal significance of the alleged circumstance that Samruk is "part" of the Republic of Kazakhstan.

**IV.2  Samruk is an independent legal entity under the laws of Kazakhstan**

18  Samruk is a Joint Stock Company (**JSC**) under the laws of the Republic of Kazakhstan and as such is an independent legal entity. Stati et al. have recognised this.

19  The Republic of Kazakhstan is the sole shareholder of Samruk. In this connection Samruk refers to the following provisions from the 'Kazakhstan Law On the National Welfare Fund':

20  Article 3. The Fund Shares Ownership Matters:

  "*The shares of the Fund are the exclusive property of the state and cannot be alienated.*"

21  Article 7. The Sole Founder and Shareholder of the Fund:

  "*1. The sole founder and shareholder of the fund is the government of the Republic of Kazakhstan.*"

22  Article 1(3) of the 'Kazakhstan Law On Joint Stock Companies' contains the following definition:

> "*shareholder - the person possessing the share*"

23  Article 1(4) of the 'Kazakhstan Law On Joint Stock Companies' defines "share" as a security issued by a JSC and attributes the following fundamental rights to its holder:

(i) the right to participate in the management of the JSC;

(ii) the right to receive dividends; and

(iii) the right to a portion of the assets of the JSC upon liquidation.

24  The parties holding shares in a JSC do not have a right to the property of the JSC. This also follows from article 3.1(2) of the 'Kazakhstan Law On Joint Stock Companies': "*JSC owns property separately from its shareholders...*"

### IV.3 Samruk is not liable for the obligations of its shareholder

The 'Kazakhstan Civil Code'

25  A general principle under the law of Kazakhstan is that a legal entity is not liable for the obligations of its founders/participants or other right holders.

26  Article 33.1 of the 'Kazakhstan Civil Code' defines 'legal entity' as follows:

> "*An organisation which has under the right of ownership, the right of business authority or operational management, its separate assets and which is liable with this property for its obligations, which may, in its name, acquire and exercise property rights and personal non-property rights and obligations, and may be the plaintiff or defendant in the court of law, shall be recognised as a legal entity.*"

27  Article 44.2 of the 'Kazakhstan Civil Code' reads as follows:

> "*A founder (participant) of a legal entity or the owner of its property shall not be liable under its obligations, and <u>the legal entity shall not be liable under obligations of its founder (participant), or of the owner of its property</u>, except for the cases stipulated by the present Code, other legislative acts, or the foundation documents of a given legal entity. .*"

> [emphasis added, counsel]

The 'Kazakhstan Law On Joint Stock Companies'

28  The general principle in article 44.2 of the 'Kazakhstan Civil Code' that a legal entity is not liable for the obligations of its founders/participants or other entitled parties is also specifically included in the 'Kazakhstan Law On Joint Stock Companies'.

29   Article 3 of the 'Kazakhstan Law On Joint Stock Companies' defines "joint stock company" as follows:

"*1. Joint Stock Company ("JSC") shall mean a legal entity authorised to issue shares in order to raise funds for its operations. <u>JSC shall own property separately from its shareholders and shall not be liable for their obligations</u>. JSC shall be liable for its obligations, save for obligations of Government for Citizens State Corporation, to the extent of its own property.*"

[emphasis added, counsel]

<u>The Samruk articles of association</u>

30   The abovementioned principle as also recorded in the 'Kazakhstan Civil Code' and the 'Kazakhstan Law On Joint Stock Companies' is also set down in Samruk's articles of association. The first sentence of article 16 of these articles of association reads as follows:

"*The Fund possesses property that is separate to the property of the Sole Shareholder <u>and is not liable for its obligations</u>.*"

[emphasis added, counsel]

31   In short: the law of Kazakhstan is unambiguous on this point: Samruk is not liable for the obligations of its sole shareholder, the Republic of Kazakhstan.

IV.4   **The 'US Foreign Sovereign Immunities Act'**

32   In making its assertion in this context that "Samruk must be regarded as 'part' of the Republic of Kazakhstan" Stati et al. made reference in paragraphs 68-71 of the Attachment Application to proceedings in America. That reference is as misleading as it is incorrect.

33   The proceedings in the United States of America (**United States**) referred to, concern an action in which the court has found that there is no debate between parties on the fact that Samruk it is covered by the definition of a "foreign state" in the context of the "US Foreign Sovereign Immunities Act" (**FSIA**). The proposition of Stati et al. as formulated at 32 has no bearing on the present matter and does not make Samruk legally "part" of the Republic of Kazakhstan.

34   The FSIA is a domestic legal framework in the United States that provides that '*foreign states*' and '*agencies and instrumentalities*' van '*foreign states*' in principle enjoy jurisdictional immunity of the courts in the United States and in principle enjoy immunity in respect of attachment and enforcement. In the proceedings mentioned in the Attachment Application Samruk advanced that it was an '*agency or instrumentality of a foreign state*'

in the meaning of the FSIA and for that reason enjoyed jurisdictional immunity. The relevant provision in the FSIA is Section 1603 (**Exhibit 5**):

> "(a)   A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
>
> (b) An "agency or instrumentality of a foreign state" means any entity—
>
> (1)   <u>which is a separate legal person</u>, corporate or otherwise, and
>
> (2)   which is an organ of a foreign state or political subdivision thereof, or <u>a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof</u>, and
>
> (3)   which is neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country.[1]"
>
> [emphasis added, counsel]

35  Samruk is protected as an '*agency or instrumentality*' in the meaning of the FSIA, not because it is one and the same as the Republic of Kazakhstan, but because:

(i)    it is an independent legal entity;

(ii)   the majority of the shares in Samruk are held by the Republic of Kazakhstan; and

(iii)  Samruk is not an entity under the law of the United States, but under the law of Kazakhstan.

36  Given that Samruk satisfies the definition of an '*agency or instrumentality of a foreign state*', Samruk is entitled to invoke immunity under the FSIA. No more and no less.

37  Under the laws of the United States it is clear that there is the presumption that an '*agency of instrumentality of a foreign state*' as defined in the FSIA is separate to the state itself, such that the property of an '*agency or instrumentality*' is not the property of a state and that an '*agency or instrumentality*' is not liable for debts or obligations of a state.

38  In short, there is no ground whatsoever for an attachment against Samruk.

V    **NO RIGHT TO EFFECT EXECUTION/CLAIM VIS-À-VIS SAMRUK**

39  The Attachment Application states that the claim to be brought by Stati et al. in the main action will consist of an application for recognition and enforcement of the Arbitral Award in the Netherlands.[2]

---

[1] The words "*nor created under the laws of any third country*" mean that in order to fall within the scope of the FSIA, an entity must be incorporated under the law of the "foreign state" in question and not under the law of third states in relation to that "foreign state".

| | |
|---|---|
| 40 | The supposed claim of Stati et al. vis-à-vis Samruk therefore stems, so Stati et al. contend, from an order in the Arbitral Award for payment of sums of money to Stati et al. |
| 41 | In the meantime, Stati et al. have submitted an application to the Amsterdam Court of Appeal requesting recognition and enforcement of the Arbitral Award on the basis of Article 1075 in conjunction with Articles III and IV of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (**New York Convention**), and alternatively, Article 1076 in conjunction with Articles 985-991 DCCP (the **Application**). The Application is also directed against Samruk. |
| 42 | Given that the application of Stati et al. for recognition and enforcement of the Arbitral Award in relation to Samruk does not comply with the conditions for recognition and enforcement of the Arbitral Award or there are grounds for refusal at issue, the Application of Stati et al. for recognition and enforcement of the Arbitral Award should be dismissed by the Amsterdam Court of Appeal. Here too, the defectiveness of the right invoked by Stati et al. vis-à-vis Samruk as referred to in Article 705 (2) DCCP is demonstrated and the Pre-Judgment Attachment should be lifted. Samruk clarifies this below. |

<u>No arbitration agreement between Stati et al. and Samruk</u>

| | |
|---|---|
| 43 | In the context of the application for recognition and enforcement of the Arbitral Award based on Article 1075 DCCP in conjunction with Articles III and IV of the New York Convention, Stati et al. are required under Article IV (1)(b) of the New York Convention to submit an original arbitration agreement between Stati et al. and Samruk. |
| 44 | Article IV of the New York Convention states as follows: |

> *"1 To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:*
>
> *(a) The duly authenticated original award or a duly certified copy thereof;*
>
> *(b) <u>The original agreement referred to in article II or a duly certified copy thereof</u>.*
>
> *(…)."*
>
> [emphasis added, counsel]

| | |
|---|---|
| 45 | However, no arbitration agreement exists to which Samruk is a party. |
| 46 | In the Application (paragraphs 5 and 20), Stati et al. refer to Article 26 of the Energy Charter Treaty (**Energy Charter**). However, in the Energy Charter between Stati et al. and Samruk, no arbitration agreement has been stipulated, or at any rate, there is no consent on the side of Samruk to refer disputes to arbitration. |

---

[2] See paragraph 82, Attachment Application

47   Article 26 of the Energy Charter states, to the extent relevant, as follows:

"*1. Disputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III shall, if possible, be settled amicably.*

(…)

*3. a) Subject only to subparagraphs b) and c), <u>each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article</u>.*

(…)

*4. In the event that an Investor chooses to submit the dispute for resolution under subparagraph 2 c), the Investor shall further provide its consent in writing for the dispute to be submitted to:*

(…)

*c) an arbitral proceeding under the Arbitration Institute of the Stockholm Chamber of Commerce.*"

[emphasis added, counsel]

48   Article 26 (3)(a) of the Energy Charter stipulates an "*unconditional consent to the submission of a dispute to international arbitration (…) in accordance with the provisions of this Article*" of a '*Contracting Party*'.

49   A 'Contracting Party' is defined in Article 1 (2) of the Energy Charter as follows:

"*"Contracting Party" means a state or Regional Economic Integration Organization which has consented to be bound by this Treaty and for which the Treaty is in force.*"

50   Samruk does not qualify as a 'Contracting Party' within the meaning of Article 1 (2) of the Energy Charter. Samruk is an independent private entity under the law of Kazakhstan, not a state of a 'Regional Economic Integration Organization' which "*(…) has consented to be bound by this Treaty and for which the Treaty is in force.*" For this reason Samruk has not given any "*unconditional consent to the submission of a dispute to international arbitration*" within the meaning of Article 26 (3)(a) of the Energy Charter and accordingly, no arbitration agreement can exist between Stati et al. and Samruk.

51   Nor have Stati et al. adopted the position in the Attachment Application and the Application that an arbitration agreement exists between Stati et al. and Samruk.

52  It should be noted for the sake of completeness that with the exception of the contents of footnote 1 in the Application, no attention is paid to Samruk. Footnote 1 of the Application states:

> "See for Samruk-Kazyna JSC Appendix 8 (in particular the paragraphs 65-76 included in the appendix of the application to levy prejudgment attachment pursuant to Articles 700 et seq. DCCP)."

53  The submission of an original or a certified copy of the agreement for arbitration is also a requirement for obtaining leave to enforce a foreign Arbitral Award in the context of Article 1076 DCCP (which does not apply here).[3] This means that the alternative basis for the application to enforce the Arbitral Award also fails in connection with the non-existence of an arbitration agreement between Stati et al. and Samruk.

*No "proper notice"*

54  Article V opening lines and (1)(b) of the New York Convention stipulates:

> "1 Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> (…)
>
> (b) <u>The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings</u> or was otherwise unable to present his case; or
>
> (…)."

[emphasis added, counsel]

55  In short, the fundamental principle of audi alteram partem is enshrined in Article V (1)(b) of the New York Convention. One of the ways in which this principle is expressed in the context of arbitration proceedings is by informing an alleged defendant party of the existence of arbitration proceedings so that a party can present its point of view in those proceedings.

56  Samruk was not informed by Stati et al. with regard to the appointment of an arbitrator and the Arbitration Proceedings as referred to in Article IV (1)(b) of the New York Convention. It is at any rate clear from the documents that Stati et al. have submitted to the proceedings as appendices to the Application, that Stati et al. have involved only the

---

[3] See Article 1076 (1) DCCP.

**LOYENS LOEFF**

| | |
|---|---|
| | Republic of Kazakhstan in the Arbitration Proceedings and not Samruk.[4] This has occurred even though Stati et al. also regard Samruk as an independent legal entity. |
| 57 | This means that the application for recognition and enforcement also merits dismissal on the basis of Article IV (1)(b) of the New York Convention. |

Conclusion

| | |
|---|---|
| 58 | It follows from the preceding that Stati et al. have no prospect of obtaining leave to enforce the Arbitral Award in the Netherlands in relation to Samruk. Here too, the defectiveness of the right invoked by Stati et al. has been proved prima facie. |
| 59 | It follows from the preceding that the attachment levied by Stati et al. against Samruk should be lifted. |

| | |
|---|---|
| VI | **THE DEFENCES ADVANCED BY STATI ET AL. AGAINST THE CLAIM** |
| 60 | In a letter of 23 October 2017, Samruk demanded that Stati et al. lift the wrongfully levied Pre-Judgment Attachment and held Stati et al. liable for the damage that Samruk has sustained or will sustain as a consequence of the Pre-Judgment Attachment. Samruk has pointed out to Stati et al. that Samruk is an independent legal entity which was not a party to the Arbitration Proceedings and that Samruk was not ordered under the Arbitral Award to pay any sum of money to Stati et al. |
| 61 | In their response dated 24 October 2017, the lawyers representing Stati et al. indicated that Stati et al. have no intention of lifting the Pre-Judgment Attachment. The lawyers representing Stati et al. referred in their letter (once again) to the fact that Samruk stated in proceedings in the United States that it falls under the definition of a *'foreign state'* in the context of the FSIA. This assertion of Stati et al. is irrelevant. Samruk refers to what has been set out above in paragraphs 32-38. |

| | |
|---|---|
| VII | **URGENT INTEREST SAMRUK** |
| 62 | The levied attachment has far-reaching consequences for Samruk, because the Pre-Judgment Attachment has consequences under financing agreements entered into by Samruk. In view of this, the lifting of the Pre-Judgment Attachment is required in the very short term. |

| | |
|---|---|
| VIII | **EXEQUATUR PROCEDINGS IN ENGLAND** |
| 63 | Finally, the following remarks are made in relation to the Arbitral Award. |
| 64 | On 3 November 2017 the Republic of Kazakhstan sent a letter to the Amsterdam Court of Appeal in the context of the exequatur proceedings re. the Arbitral Award initiated by Stati |

---

[4] See exhibit 7, Application: a letter addressed on behalf of Stati et al. to the Arbitration Institute of the Stockholm Chamber of Commerce of 26 July 2010 in which reference is made to a Request for Arbitration that is directed against the Republic of Kazakhstan.

et al. in the Netherlands (**Exhibit 6**). This letter was also sent to counsel for Stati et al. and Samruk.

65   This letter, among other things, notes the exequatur proceedings regarding the Arbitral Award made pending by Stati et al. in England. In that context, the letter states the following about the arbitral award (page 5):

> The judgment of the *High Court of Justice*
> Based on the evidence collected by the Republic of Kazakhstan up to the end of 2016, which it presented in the English proceedings partly based through extensive witness and expert statements and which Stati et al. was able to comment on, the High Court of Justice found in its judgment of 6 June 2017 (**appendix 2**) in par. 92 that
>
> "*there is a sufficient prima facie case that the Award was obtained by fraud*".
>
> In this connection it was found in par. 65 that, should the Republic of Kazakhstan's position be correct, "*the present case is one where [Stati et al.] encouraged the Tribunal to rely on an indicative offer [from KMG] that [Stati et al.] knew was misleading, because it was based on false information that they had provided*". According to the High Court of Justice, further examination of the fraud was necessary. The *High Court of Justice* phrased it as follows in par. 93:
>
> > "*It will do nothing for the integrity of arbitration as a process or its supervision by the Courts, or the New York Convention, or for the enforcement of arbitration awards in various countries, if the fraud allegations in the present case are not examined at a trial and decided on their merits, including the question of the effect of the fraud where found. The interests of justice require that examination.*"
>
> After the aforementioned judgment was rendered, further rules of procedure were established in the English proceedings on 27 June 2017. In line with these rules of procedure the Republic of Kazakhstan further adumbrated on its position in a written document of 1 August 2017. On 26 September 2017 Stati et al. responded in writing. The Republic of Kazakhstan has until 7 November 2017 to reply. In addition, the parties will have to cooperate with disclosure and will have to submit evidence of witnesses and experts. Eight days are planned for the oral hearing in the period of 31 October to 13 November 2018. At this point witnesses will also (potentially) be heard.

66   In violation of article 21 DCCP, the aforementioned decision of the High Court of Justice of 6 June 2017 and the further order of process adopted in the English action on 27 June 2017 in the English procedure, have not been mentioned in the Attachment Application.

## IX   JURISDICTION

67   Your Honour, this Court in summary proceedings has jurisdiction on the basis of Article 705 (1) DCCP to hear this case because this Court gave the Decision on the basis of which the Pre-Judgment Attachment was levied.

**LOYENS LOEFF**

| X | **EVIDENCE** |
|---|---|
| 68 | To substantiate its assertion and claims, Samruk refers to the exhibits described in this summons. If and in so far as Samruk bears any burden of proof, Samruk offers to prove all of its assertions by all legal means. |

| XI | **FOR WHICH REASONS:** |
|---|---|

may it please this Court to give a ruling in summary proceedings, in a judgment that is to the extent possible immediately enforceable:

1. principally, to lift the attachment levied against Samruk on the shares in the capital of KMG Kashagan B.V; and

2. alternatively, to order Stati et al. jointly and severally to lift or cause the lifting of the attachment levied against Samruk, within one day of passing this judgment, subject to an immediately payable penalty of EUR 10,000,000 per calendar day that Stati et al. fail to comply; and

3. to order Stati et al. jointly and severally to pay to Samruk:

    (a) the costs of this action with the provision that if these costs are not paid within fourteen days after the date of the judgment to be pronounced in this action, statutory interest is due from the fifteenth day after the date of the judgment; and

    (b) subsequent costs of EUR 131 without service, plus EUR 68 with service, stipulating that if these costs are not paid within fourteen days of the service of this judgment, statutory interest will be payable on the costs with effect from the fifteenth day after service of the judgment.

The costs incurred by me, Bailiff, are EUR [●]

This matter is being dealt with by J. van den Brande and H.F. van Druten, Loyens & Loeff N.V., Fred. Roeskestraat 100, 1076 ED, Amsterdam, telephone: 020 578 5925; fax: 020 578 5818 and 010 4123217; e-mail address: jeroen.van.den.brande@loyensloeff.com hendrik.van.druten@loyensloeff.com