```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| IN RE APPLICATION OF ANATOLIE STATI, GABRIEL STATI, ASCOM GROUP, S.A., and TERRA RAF TRANS TRAIDING LTD. FOR AN ORDER DIRECTING DISCOVERY FROM STATE STREET CORPORATION PURSUANT TO 28 U.S.C. § 1782. | CIVIL ACTION NO. 15-MC-91059-LTS |

**MEMORANDUM AND ORDER RE:**
**PETITIONERS' MOTION TO COMPEL DISCOVERY (DOCKET ENTRY # 12);**
**THE NATIONAL BANK OF THE REPUBLIC OF KAZAKHSTAN AND**
**STATE STREET CORPORATION'S MOTION TO INTERVENE AND**
**VACATE THE EX PARTE ORDER ISSUED PURSUANT TO 28**
**U.S.C. § 1782, OR TO STAY § 1782 DISCOVERY**
**(DOCKET ENTRY # 25)**

**January 18, 2018**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to compel discovery for use in foreign proceedings under 28 U.S.C. § 1782 ("section 1782") filed by petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. ("petitioners") pursuant to Fed. R. Civ. P. 45 ("Rule 45"). (Docket Entry # 12). In March 2015, the court allowed an ex parte application filed by petitioners seeking leave to serve a subpoena duces tecum with 14 categories of documents and a Fed. R. Civ. P. 30(b)(6) ("Rule 30(b)(6)") deposition subpoena on State Street Corporation ("State Street").[1] (Docket Entry # 11). The two subpoenas seek

---

[1] As set out in a sworn declaration, petitioners did not receive notice of the allowance of the application until July 31, 2017 owing to a miscommunication. (Docket Entry # 14, n.1).

documents and information relative to accounts and other assets owned directly, indirectly, legally, and/or beneficially by the Republic of Kazakhstan ("ROK").  (Docket Entry ## 1-1, 14-3).  The subpoenas also seek documents and information regarding accounts held by or on behalf of the National Bank of the Republic of Kazakhstan ("NBK"), including in NBK's capacity as manager of the National Fund of Kazakhstan ("the National Fund").  Seeking to intervene in these proceedings, NBK and State Street move to vacate the ex parte March 2015 Order under Rule 45 or Fed. R. Civ. P. 60.  (Docket Entry # 25).  After conducting a hearing on January 10, 2018, this court took the motions (Docket Entry ## 12, 25) under advisement.

## BACKGROUND

The underlying arbitral award in excess of $500 million dollars "rendered by a Stockholm based tribunal" under "the Energy Charter Treaty" against ROK concerned a dispute about investments and construction of a liquified petroleum gas plant in Kazakhstan.  (Docket Entry # 29-1, ¶¶ 1-2, 13-14) (Docket Entry # 36, ¶¶ 2, 4) (Docket Entry # 4-1, pp. 10-17).  ROK applied to set aside the award in the Seva Court of Appeal in Stockholm and amended the claim to include fraud.  (Docket Entry # 29-1, ¶¶ 4, 7) (Docket Entry # 36, ¶ 3).  The court refused to set aside the award and the Supreme Court of Sweden denied ROK's motion for review.  (Docket Entry # 36, ¶¶ 2-4) (Docket Entry #

29-1, ¶¶ 7-8).  The arbitral award is therefore final.  (Docket Entry # 36, ¶ 4).

Thereafter, petitioners "commenced an action" in the District Court of Stockholm ("the Stockholm court") which rendered an "*ex parte* provisional sequestration order" allowing enforcement of the arbitral award and the attachment of ROK's assets in Sweden.  (Docket Entry # 14, ¶ 8) (Docket Entry # 36, ¶ 7(a)).  Based on this ex parte provisional sequestration order in the Stockholm court, the Swedish Enforcement Authority issued attachments of assets "believed to be owned" by ROK, which ROK and NBK are challenging in an appeal to the District Court of Nacka ("the Nacka court") (collectively, "the Swedish proceedings").  (Docket Entry # 14, ¶¶ 8-12) (Docket Entry # 36, ¶ 7(a)).  In an October 20, 2017 reply brief filed in the Stockholm court, ROK argued there is no risk of sabotage to support the attachments because NBK owned and controlled the attached assets.[2]  (Docket Entry # 14, ¶¶ 8-12) (Docket Entry # 36, ¶ 7(a)) (Docket Entry # 36-1).  Petitioners therefore seek discovery via the document and deposition subpoenas to State

---

[2] As an aside, petitioners' brevis recitation of ROK's statement in the Stockholm court regarding enforcement proceedings (Docket Entry # 36, ¶ 7(a)) (Docket Entry # 35, p. 9) is taken out of context and not convincing for reasons pointed out by NBK and State Street (Docket Entry # 50, n.3) (Docket Entry # 36-1, ¶ 28).  Separately, a risk of "sabotage" refers to "a danger that the respondent will seek to transfer assets out of the jurisdiction and/or take other measures to render itself judgment-proof in Sweden."  (Docket Entry # 14, ¶ 11).

Street to use in the Swedish proceedings regarding the interrelationship and the ownership of the attached assets of ROK, NBK, and/or the National Fund in the Swedish proceedings. (Docket Entry # 13) (Docket Entry # 45, ¶ II(B)) (Docket Entry # 35).

They also seek the discovery to use in a Belgian proceeding in which ROK challenged ex parte attachments issued by the Brussels Court of First Instance ("the Belgian proceeding"). NBK seeks to intervene in the Belgian proceeding and asserts that attached assets to aid in the collection of the arbitral judgment against ROK belong to NBK as opposed to ROK. (Docket Entry # 36, ¶ 7(c)) (Docket Entry # 36-3). Petitioners also identify proceedings in Amsterdam District Court ("the Amsterdam court") allowing ex parte attachments of ROK property, including assets held by an "Amsterdam branch of a Belgian subsidiary of the Bank of New York Mellon, 'BNY Mellon SA/NV, concerning [a] savings portfolio of the National Fund'" ("the Netherlands proceeding"). (Docket Entry # 36, ¶ 7(b)).

As set out in an affidavit by a Vice President and Senior Counsel of State Street Bank & Trust Company, "State Street provides services only to the National Bank" of the Republic of Kazakhstan, i.e., NBK (Docket Entry # 27, ¶¶ 1, 6) (Docket Entry # 22, ¶¶ 1, 6), although other evidence suggests that NBK, as trustee, holds assets of the National Fund with ROK retaining

ownership of the assets (Docket Entry # 14, ¶ 16) (Docket Entry # 5).  State Street's NBK accounts "are maintained by three State Street subsidiaries in London, England" as opposed to in Massachusetts.[3]  (Docket Entry # 22, ¶¶ 7-10) (Docket Entry # 27, ¶¶ 7-10).  In February 2014, petitioners sought and obtained recognition of the arbitral award in the High Court of Justice in London ("the London court").  (Docket Entry # 36, ¶ 6) (Docket Entry # 29, ¶ 2).  In an application to the London court, ROK sought to set aside the permission granted to enforce the award. (Docket Entry # 29-1, ¶ 5) (Docket Entry # 29, ¶ 4).  In June 2017, the London court allowed ROK to amend the application to include fraud allegations.  (Docket Entry # 29-1, ¶¶ 6, 95) (Docket Entry # 29, ¶ 6).  A trial on the fraud allegations is set to commence in November 2018.  (Docket Entry # 36, ¶ 6) (Docket Entry # 29, ¶ 8).

In August 2017, the Luxembourg District Court issued an ex parte order recognizing and enforcing the arbitral award in Luxembourg.  (Docket Entry # 36, ¶ 7(d)).  ROK filed an appeal from the order.  In the meantime, "a Luxembourg bailiff levied attachments on ROK's property in Luxembourg."  (Docket Entry # 36, ¶ 7(d)).

In October 2017, ROK filed an action in the United States

---

[3]  State Street and NBK therefore argue that section 1782 does not reach documents located overseas.

District Court in the District of Columbia alleging that petitioners violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., and engaged in fraud and a civil conspiracy ("the RICO action").  (Docket Entry # 28-1).  In light of the November 2018 trial in the London court and the pendency of the fraud claims in the RICO action, NBK and State Street alternatively move to stay the section 1782 discovery until a resolution of these proceedings.  (Docket Entry # 25) (Docket Entry # 26, ¶ III).

## DISCUSSION

Section 1782 "authorizes, but does not require, a federal district court to provide assistance to a complainant in a" foreign proceeding.  Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 255 (2004) ("Intel").  The three statutory prerequisites to obtain discovery under section 1782 require that:  (1) the plaintiff seek discovery from a person who "resides or is found" in this district; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the plaintiff is an "interested person."[4]  28 U.S.C. §

---

[4] The Eleventh Circuit adds a fourth requirement, namely, that "the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing.'"  Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1269 (11th Cir. 2014) (quoting In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007)); accord Sergeeva v. Tripleton Intl. Ltd., 834 F.3d 1194, 1198 (11th Cir. 2016).

1782(a); Euromepa, S.A. v. Esmerian, Inc., 154 F.3d 24, 27 (2nd Cir. 1998) ("Euromepa"); In re Barnwell Enterprises Ltd., 265 F.Supp.3d 1, 8-9 (D.D.C. 2017); In re Application of Gazprom Latin Am. Servicios, C.A., 4:14-MC-1186, 2016 WL 3654590, at *3 (S.D. Tex. July 6, 2016) (person "must reside or be found in the district, . . . discovery must be for use in a proceeding before a foreign tribunal[,]" and "application must be made by 'any interested person'"), appeal dismissed sub nom., 2016 WL 9959263 (5th Cir. Dec. 15, 2016) (No. 16-20469); Minis v. Thomson, 14-91050-DJC, 2014 WL 1599947, at *1 (D. Mass. Apr. 18, 2014); see Intel, 542 U.S. at 256–65.  Once these three requirements are satisfied, the court considers the following "discretionary factors" commonly referred to as the Intel factors:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign body to U.S. federal court assistance; (3) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States[,]"; and (4) whether a request is unduly intrusive or burdensome.

Minis v. Thomson, 2014 WL 1599947, at *3 (quoting Intel, 542 U.S. at 264–65); accord Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d at 1271-72; see In re Barnwell Enterprises Ltd., 265 F.Supp.3d at 9.

Relying primarily on a series of decisions in the Second

7

Circuit including Euromepa, NBK and State Street maintain that petitioners fail to satisfy the second statutory requirement because the attachments and attempted executions to satisfy the arbitral judgment are not adjudicative.[5]  (Docket Entry # 26, ¶ II(A)(1)) (Docket Entry # 21, p. 6)[6] (Docket Entry # 50, ¶ II). Petitioners contend that NBK and State Street overstate the holding in Euromepa; the language of section 1782 does not preclude those seeking to "collect on a judgment"; and the Swedish, Belgium, and Amsterdam proceedings are adjudicative because they concern contested factual and legal questions regarding ROK's ownership and use of assets and the relationships between ROK, NBK, and the National Fund.  (Docket Entry # 35).

With respect to the second statutory requirement, a 1964 amendment to section 1782 "broadened" the language "from any foreign '*judicial* proceeding' to any 'proceeding in a foreign or

---

[5] Notably, the plain language of section 1782 does *not* limit the discovery to "adjudicative" proceedings.  See In re Clerici, 481 F.3d 1324, 1333 (11th Cir. 2007) ("nothing in the plain language of § 1782 requires that the proceeding be adjudicative in nature).  Whereas petitioners assert that section 1782's language does not restrict the use of evidence to "collect on a judgment," which is the caption of the adjudicatory argument, they argue that the European proceedings are adjudicative in nature.  (Docket Entry # 35).  NBK and State Street thus point out that petitioners "do not dispute that § 1782 discovery can only be used for 'adjudicative proceedings.'" (Docket Entry # 50, ¶ II).  Accordingly, this court will assume dubitante that section 1782 contains an adjudicatory requirement in the course of rejecting the argument.

[6] Page numbers refer to the page as docketed rather than the page number of the document itself.

international *tribunal*.'" In re Babcock Borsig AG, 583 F.Supp. 2d 233, 238 (D. Mass. 2008) (quoting and discussing Intel, 542 U.S. at 258) (emphasis added).  In a pre-Intel decision, the Second Circuit in Euromepa explained that the second element focuses "on two questions:  (1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding."  Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d at 27.  The Euromepa court further noted that, "The seminal case in this Court regarding the analysis of whether a foreign proceeding is adjudicative in nature is In re Letters Rogatory Issued by Director of Inspection of Government of India, 385 F.2d 1017, 1020 (2d Cir. 1967) (Friendly, J.) ('India')."  Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d at 27.  The Second Circuit in India, in turn, interpreted the 1964 amendment expanding "judicial proceeding" to a "tribunal" and concluded that an Indian Income-Tax Office was not a tribunal within the meaning of section 1782 "because the role of the government in the administrative proceeding was more akin to a prosecutorial decision to bring a case rather than to that of a neutral arbitrator."  Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d at 27 (discussing India, 385 F.2d at 1020-21); India, 385 F.2d at 1020-21 ("one useful guideline" to assess whether a body is a tribunal "is the absence of any degree of separation between the prosecutorial and *adjudicative* functions") (emphasis added).

Here, the courts in the Swedish proceedings and, in particular, the Stockholm court, are tribunals. The Stockholm court is acting as a neutral, adjudicative decision-maker as opposed to performing a prosecutorial function. Specifically, ROK is contesting the proceedings in the Stockholm court on the basis that there is no risk of sabotage inasmuch as it does not own "[t]he assigned property" because the property is part of the National Fund and managed by NBK. (Docket Entry # 36-1, pp. 2, 8, 12-15). ROK also argues that it enjoys immunity. (Docket Entry # 36-1, pp. 5-8). ROK provided exhibits as evidence to support its positions, which presumably the Stockholm court may consider in adjudicating ownership and other issues. Such functions exemplify the adjudicative nature of the Swedish proceedings. See generally Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1270 n.4 (11th Cir. 2014).

The adjudicative nature of the Netherlands and Belgian proceedings is similar. (Docket Entry # 36, ¶¶ 7(b), 7(c)) (Docket Entry ## 36-2, 36-3). As to the former, ROK contests the recognition given the arbitral award by the Amsterdam court and a Kazakstan company is seeking to lift the attachments on the basis that the property is not owned by ROK and the company is a separate legal entity from ROK. (Docket Entry # 36, ¶ 7(b)) (Docket Entry # 36-2). With respect to the latter, NBK is

seeking to intervene in the Belgian proceedings and objecting to the attachments because the assets belong to it rather than ROK. (Docket Entry # 36, ¶ 7(c)) (Docket Entry # 36-3).  Here again, the Amsterdam and Belgian courts are acting and functioning as neutral, adjudicative decision-makers.  In sum, petitioners need the discovery concerning ownership of assets and the interrelationship of the foregoing entities for use in these ongoing, contested, and adjudicatory foreign proceedings.

Relying on Euromepa and other decisions, NBK and State Street nevertheless contend that enforcement proceedings, such as the European and London proceedings, to collect on a judgment, such as the arbitral award, are not adjudicative.  Petitioners maintain that NBK and State Street overstate the Euromepa holding.  As correctly reasoned by petitioners (Docket Entry # 35, p. 14),[7] the Second Circuit in Euromepa held that a French Bankruptcy Proceeding was "not an adjudicative proceeding within the meaning of" section 1782 "for the following reasons":

> The merits of the dispute between Esmerian and Euromepa have already been adjudicated and will not be considered in the French Bankruptcy Proceeding.  As a matter of French law, the judgment of the French Supreme Court acts as res judicata with respect to the merits of the dispute in the French Bankruptcy Proceeding.  Thus, in the French Bankruptcy Proceeding, nothing is being adjudicated; the already extant judgment is merely being enforced (to the extent permitted by the assets of the bankruptcy estate).

Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d at 28.  Euromepa is

---

[7] See footnote six.

distinguishable because in the case at bar there are no prior rulings on the contested issues of ownership and/or sabotage that would constitute issue preclusion or leave nothing left to adjudicate in the Stockholm court, the Netherlands proceeding, and/or Belgian proceeding.

Another case cited by the NBK and State Street, Jiangsu S.S. Co., Ltd. v. Success Super. Ltd., 14 Civ. 9997 CM, 2015 WL 3439220, at *3-7 (S.D.N.Y. Feb. 5, 2015), is also distinguishable because the enforcement or attachment proceeding was not reasonably contemplated to afford any analysis of its adjudicatory function. Although the court stated that, "[A] post-judgment enforcement proceeding, if that is the sort of proceeding contemplated by Jiangsu, is exactly the sort of proceeding for which Euromepa held that § 1782 discovery is unavailable," id. at *6, the Euromepa court did not universally bar discovery in all bankruptcy proceedings, particularly where issues are being adjudicated. See Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d at 28 ("it is clear that a bankruptcy proceeding may, in some instances, be an adjudicative proceeding within the meaning of the statute") (citing Lancaster Factoring Co. V. Mangone, 90 F.3d 38, 42 (2nd Cir. 1996)). Accordingly, at a minimum, the proceeding in the Stockholm court as well as the Netherlands and Belgian proceedings are adjudicative in nature assuming, for purposes of argument, that section 1782 contains

such a requirement.

NBK and State Street next argue that petitioners cannot use section 1782 to obtain documents located overseas at State Street's three, London subsidiaries.  (Docket Entry # 26, ¶ II(A)(2)) (Docket Entry # 50, ¶ III).  They submit that the purpose of section 1782 is to aid foreign litigants to obtain evidence located in the United States which categorically bars petitioners from using section 1782 to obtain the overseas documents.  (Docket Entry # 26, ¶ II(A)(2)) (Docket Entry # 50, ¶ III).  Petitioners correctly maintain that the argument pertains to the subpoena duces tecum rather than the Rule 30(b)(6) deposition subpoena.  (Docket Entry # 35); see In Edelman v. Taittinger, 295 F.3d 171, 177-80 (2d Cir. 2002).  Separately, petitioners contend that the relevant test is not the location of the documents overseas but, rather, whether State Street has possession, custody, or control of the documents.[8]  (Docket Entry # 13, ¶ IV(A)(1)) (Docket Entry # 35, ¶ 4(A)(2)).

A split of authority exists regarding whether section 1782 completely bars the use of section 1782 to obtain documents located overseas.  On the one hand, the language of the statute only states that, "The district court of the district in which a person resides or is found may order him . . . to produce a

---

[8]  In addressing a relevancy argument, petitioners acknowledge that, "the assets held by State Street are located in the United Kingdom . . .."  (Docket Entry # 45, pp. 9, 11).

13

document . . .." 28 U.S.C. § 1782(a). The plain language of section 1782 therefore "requires only that the party from whom discovery is sought be 'found' here; not that the documents be found here."[9] In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, 2006 WL 3844464, at *5 (rejecting argument that section 1782 assistance cannot extend to production of documents located overseas).[10] Relying on the additional language in

---

[9] A court may also consider the location of documents overseas in assessing the fourth, *discretionary* factor in Intel. See In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, Civ. M19-88 BSJ, 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) ("absent any express statutory language, the location of the documents at issue should at most be a discretionary consideration"); see also Nikon Corp. v. ASML US Inc., MC-17-00035-PHX-JJT, 2017 WL 4024645, at *3 (D. Ariz. Sept. 12, 2017) ("the court *may* consider 'whether the requested materials are located outside the United States'" and considering location of documents in Netherlands when discussing fourth Intel factor) (emphasis added), aff'd sub nom., No. 17-16961, 2017 WL 6331090 (9th Cir. Dec. 12, 2017). For example, in the context of discussing the respondent's objection to section 1782 discovery under the fourth Intel factor, i.e., whether a request is intrusive and burdensome, because "many of the TCL documents are in Tanzania, not Massachusetts," the Minis court reasoned that section 1782(a) discovery "is in accordance with the Federal Rules of Civil Procedure," and will thus entail production of material "under the possession custody, or control of Massachusetts residents. . . .." Minis v. Thomson, 2014 WL 1599947, at *4-5. In addition, the Minis court did not address whether the location of documents overseas presents a categorical, universal bar to section 1782 discovery. See id. at 4-5. NBK and State Street thus aptly distinguish Minis. (Docket Entry # 26, n.7).

[10] The Gemeinshcaftspraxis decision is the minority view in the Southern District of New York. See In re Kreke Immobilien KG, No. 13 MISC. 110 NRB, 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013); In re Godfrey, 526 F.Supp.2d 417, 423 (S.D.N.Y. 2007).

14

section 1782 that, "the document or other thing [be] produced, in accordance with the Federal Rules of Civil Procedure" unless the order prescribes otherwise, 28 U.S.C. § 1782(a), and that such rules "cover[] materials located outside the United States," the Eleventh Circuit in Sergeeva likewise rejected the argument that section 1782 does not reach documents located overseas. Sergeeva v. Tripleton Intl. Ltd., 834 F.3d 1194, 1200 (11th Cir. 2016) ("location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a per se bar to discovery under § 1782").

Juxtaposed against this position are cases relying on legislative history and policy arguments. Without deciding the issue but favoring this latter position, the Second Circuit in Sarrio summarized the applicable reasoning:

> On its face, § 1782 does not limit its discovery power to documents located in the United States. In finding such a limitation, the district court relied in part on a Senate report asserting that the amendments providing for documentary discovery under the statute were intended to aid "in obtaining oral and documentary evidence in the United States." S.Rep. No. 88-1580, (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788 (emphasis added) . . . Professor Hans Smit, who prepared the final version of the statute[,] . . . points out that construing the statute to reach evidence abroad would make United States courts "clearing houses" for discovery in litigation around the world. Apart from its demands on federal judicial resources, that construction would be apt to transform the effect of § 1782 from "assistance to foreign and international tribunals" to interference with those bodies. Thus, despite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the

United States.

Application of Sarrio, S.A., 119 F.3d 143, 147 (2d Cir. 1997); see Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada, 384 F.Supp. 2d 45, 51 (D.D.C. 2005) (summarizing case law); In re Kreke Immobilien KG, 2013 WL 5966916, at *4; In re Godfrey, 526 F.Supp. 2d at 423–24; see also Kestrel Coal v. Joy Global, 362 F.3d 401, 404-05 (7th Cir. 2004); see generally Dolan v. U.S. Postal Service, 546 U.S. 481, 486 (2006) ("[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute"); U.S. v. Dowdell, 595 F.3d 50, 71 (1st Cir. 2010) ("'[i]t is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute'").

At this juncture, it is not necessary to take a position because, even if the location is not an absolute bar, this court will "not prescribe otherwise," 28 U.S.C. § 1782(a), but, rather, will apply the possession, custody, or control of documents requirements in Rule 45(a)(1), as urged by petitioners. At a minimum, petitioners will therefore need to satisfy this Rule 45(a)(1) provision to serve the subpoena. In the event this court finds the inferences of control lacking, petitioners request leave to conduct a Rule 30(b)(6) deposition to determine if State Street personnel in Massachusetts have possession,

custody, or control of the documents responsive to the subpoena duces tecum, which this court will allow.[11]  (Docket Entry # 13, n.5) (Docket Entry # 35, n.4).  Pending the outcome of such discovery, which shall be conducted in an expedited fashion, the motion to compel is denied without prejudice with respect to the subpoena duces tecum.

As to the first statutory requirement vis-à-vis the Rule 30(b)(6) deposition subpoena (Docket Entry # 1-1, pp. 8-13), the three, potential Rule 30(b)(6) deponents petitioners identify (Docket Entry # 35, p. 19) work and, accordingly, are "found" and likely reside in this district within the meaning of section 1782.  Petitioners are also interested persons within the meaning of the third statutory requirement.  Turning to the four, discretionary Intel factors as they pertain to the Rule 30(b)(6) subpoena (Docket Entry # 1-1, pp. 8-13), overall these factors support issuing the subpoena.  The first factor slightly favors the NBK and State Street because petitioners are participants in the foreign proceedings.  See Intel, 542 U.S. at 264.  There is insufficient proof, however, that the foreign tribunals would oppose the discovery vis-à-vis the second factor.  Coupled with Intel's holding that section 1782(a) contains no

---

[11]  Petitioners may add the subject category to the existing Rule 30(b)(6) subpoena or serve State Street with a separate Rule 30(b)(6) subpoena with this subject category.  NBK and State Street did not address the request.

17

"foreign-discoverability requirement," Intel, 542 U.S. at 253; Minis v. Thomson, 2014 WL 1599947, at *4, there is little reason to suspect that the Swedish, Netherlands, or Belgian tribunals would not be receptive to the discovered evidence. See Minis v. Thomson, 2014 WL 1599947, at *4; see generally In re Application of Chevron Corp., 762 F.Supp.2d 242, 252 (D. Mass. 2010). This court also finds that the section 1782 request is not "an attempt to circumvent foreign proof-gathering restrictions or other foreign policies." Intel, 542 U.S. at 265. In the context of the deposition, the 14 areas of inquiry (Docket Entry # 1-1, pp. 12-13) do not appear unduly intrusive or burdensome under the fourth Intel factor. Moreover, as indicated at the hearing, petitioners are willing to take protective measures to maintain confidentiality.

As explained above, the discovery is intended "for use in a proceeding in a foreign" tribunal under section 1782. NBK and State Street's argument regarding Fed. R. Civ. P. 69 lacks merit for reasons explained by petitioners (Docket Entry # 35, pp. 20-21). Petitioners sufficiently complied with LR. 7.1 and 37.1 for reasons stated by petitioners in their filings (Docket Entry ## 22, 45) and during oral argument and, in any event, LR. 1.3 sanctions in the form of denying the motion to compel are not appropriate.

In this court's discretion, a stay is not warranted. The

foreign proceedings in the Stockholm court as well as the Netherlands and Belgian proceedings are ongoing. Petitioners need the discovery forthwith to use in one or more of these proceedings.

CONCLUSION

In accordance with the foregoing discussion, the motion to compel (Docket Entry # 12) is **ALLOWED** as to the Rule 30(b)(6) deposition subpoena and **DENIED** without prejudice as to the subpoena duces tecum. The motion to intervene and vacate (Docket Entry # 25) is **ALLOWED** to the extent that NBK and State Street may intervene in these proceedings, **DENIED** as to the Rule 30(b)(6) deposition subpoena, **DENIED** without prejudice as to the subpoena duces tecum, and **DENIED** as to the request for a stay.

                                       /s/ Marianne B. Bowler
                                 **MARIANNE B. BOWLER**
                                 United States Magistrate Judge